FRANK SWEENY v. W. W. HUNTER.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 29, 1890—Decided October 5, 1891.

| 145 | 363 |
| 20 SC | 556 |
| e 20 SC | 558 |
| 145 | 363 |
| 22 SC | 389 |
| 22 SC | 390 |
| 22 SC | 391 |
| 145 | 363 |
| 30 SC | 25 |

The act of May 23, 1887, P. L. 164, prohibiting a citizen of this state from assigning a claim against a resident of this state, for the purpose of having the same collected by attachment in the courts of another state with the intent to deprive the debtor of his right of exemption, etc., and imposing a penalty therefor, is not in violation of the provisions of either the state or the national constitution.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, and MITCHELL, JJ.

No. 73 October Term 1890, Sup. Ct.; court below, No. 173 April Term 1888, C. P. No. 2.

To the number and term of the court below, an appeal was entered by the defendant from the judgment of an alderman

Charge of Court below.

entered on December 29, 1887, in favor of Frank Sweeny against W. W. Hunter, for the sum of $43. Issue.

At the trial on February 10, 1890, it was shown, in substance, that in September, 1887, Frank Sweeny, the plaintiff, a citizen of Pennsylvania and an employee of the Baltimore & Ohio Railroad Company, operating a railroad within the jurisdiction of the courts of Pennsylvania, was indebted to W. W. Hunter, the defendant, in the sum of fifty-seven dollars, for livery hire and undertaking expenses; that the said indebtedness was assigned by the defendant to one George O. Smith, a broker and real-estate agent at Wheeling, West Va., without recourse; that on September 6, 1887, said Smith commenced an action before one N. H. Caldwell, a justice of the peace for Madison district of West Virginia, and attached the wages of Sweeny in the hands of the Baltimore & Ohio Railroad Co., as garnishee; that Sweeny was notified of the action by the garnishee, but did not appear in person or by attorney; that the railroad company made answer that at the time of the attachment it was indebted to Sweeny in the sum of forty-three dollars; that judgment was entered against the railroad company, and in compliance therewith it paid into the justice's court the said sum of forty-three dollars, whereupon it was discharged as garnishee. In the present action, the plaintiff sought to recover against the defendant, under the provisions of the act of May 23, 1887, P. L. 164.

At the close of the testimony, the court, MAGEE, J., charged the jury as follows:

This act cannot affect the control of persons and property in the state of West Virginia; and if this proceeding would operate to determine the rights of property in that state, or of her citizens, we would have no hesitation in saying that the act to that extent would be unconstitutional; but, in so far as it affects and operates on property and persons in this state, it is not open to that objection. It is true that the railroad company extends through West Virginia as well as Pennsylvania and other states, and that in all these states the road is subject to state jurisdiction; but it cannot be said that the rights of property and the citizens in one state are amenable to the legislation affecting the property and citizens of another state through which the railroad may pass.

Charge of Court below.

This action does not seek to annul a judgment of another state, or to compel any of its citizens to lose any right conferred upon them by its laws. Nor does our legislation subject the railroad company to liability, under the circumstances, as not lawfully subject to the laws of West Virginia. Whatever the company was lawfully compelled to pay in West Virginia, under its laws, would have to be respected in this state, so far as the company was concerned. Article IV., § 1, of the constitution of the United States, which provides that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state," would protect the company from subsequent liability in another state. But I do not think this article of the constitution precludes this commonwealth from defining the rights, liabilities and remedies of her citizens in the present instance.

[Therefore, I say that under this act of May 23, 1887, the plaintiff may recover, if you find from the evidence :

1. That the plaintiff and defendant are citizens of this commonwealth.

2. That the said W. W. Hunter has assigned or transferred a claim against Frank Sweeny, for the purpose of having the same collected by proceedings in attachment in courts outside of this commonwealth.

3. Or, has sent the same out of this commonwealth, by assignment, transfer, or other manner whatsoever, either for or without value, for the purpose or with the intent to deprive the said Sweeny of the right to have his personal earnings or property exempt from application to the payment of debts according to the laws of this commonwealth, when the creditor and debtor, or corporation owing the money intended to be reached by such proceedings, are within the jurisdiction of the courts of this commonwealth.

4. That the right of recovery extends to the full amount of the debt, interest and costs so collected.] [1]

The material allegations of the statement, in so far as not denied by the affidavit of defence, are to be taken as admitted. It is not denied that the plaintiff was and is now a citizen of this commonwealth ; that he was an employee of the Baltimore & Ohio Railroad Co., as baggage-master with passenger trains of said railroad company on the Pittsburgh division, at

certain monthly wages; that the said Baltimore & Ohio Railroad Co. is a corporation within the jurisdiction of the courts of this commonwealth; that the company was indebted September 6, 1887, to plaintiff for his labor in the sum of $43; that the company refused to pay plaintiff his said wages, by reason of the attachment proceedings, judgment, recovery and payment by it as garnishee on action by Geo. O. Smith, assignee of the claim of W. W. Hunter, in the state of West Virginia; that the plaintiff has no property in Pennsylvania liable to be taken in execution for debt under the laws of this commonwealth, and it is expressly provided by an act of the general assembly of said commonwealth " that the wages of laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer; " that by the laws of West Virginia the wages of laborers, not citizens or residents of said state, are liable to be attached or garnisheed in the hands of the garnishee, without service of summons on the person of such non-resident; that the defendant Hunter, is a resident of Pennsylvania, residing in Allegheny county; that the said Hunter assigned his claim of $57 against said Sweeny to Geo. O. Smith, residing at Wheeling, W. Va.; that said Smith instituted suit at Wheeling against the said Sweeny, and caused to be issued a writ of attachment against said Sweeny, and his wages in the hands of the Baltimore & Ohio Railroad Co. were attached on the sixth of September, 1887, and on judgment rendered against garnishee the wages in garnishee's hands, $43, were paid into the court for the plaintiff Smith, and the garnishee discharged. . . . . .

—The jury returned a verdict in favor of the plaintiff for $48.16. Judgment having been entered, the defendant took this appeal, specifying that the court erred:

1. In the portion of the charge embraced in [ ]¹

*Mr. Wm. Yost* (with him *Mr. T. C. Jones* and *Mr. A. Y. Smith*), for the appellant:

1. The defendant, though a citizen of Pennsylvania, had a right to sue out his attachment in West Virginia. He falls within the words and spirit of the first clause of the second section of the fourth article of the constitution of the United States, that the citizens of each state shall be entitled to all

privileges and immunities of citizens in the several states. One of these is the right to institute actions of any kind in the courts of another state. The West Virginia tribunal having jurisdiction, it was not error to disregard the Pennsylvania act exempting the wages of laborers from attachment in the hands of the employer: Morgan v. Neville, 74 Pa. 52; Bolton v. Penna. Co., 88 Pa. 261.

2. We contend that the act of May 23, 1887, P. L. 164, is a palpable attempt to evade the force and effect of the following clauses of article IV. of the constitution of the United States, viz.: "Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." "The citizens of each state shall be entitled to all privileges and immunities of citizens of the several states;" and we deem it necessary to cite only the following cases: Green v. Van Buskirk, 5 Wall. 307; Green v. Van Buskirk, 7 Wall. 139; Cole v. Cunningham, 133 U. S. 107.

3. The defendant's assignee recovered a regular judgment in West Virginia, and procured part satisfaction thereof out of plaintiff's wages in strict accordance with law. The plaintiff, though having notice, made no defence or objection. How can it be reasonably said that full faith has been given in this suit to that proceeding in West Virginia, when the record of that proceeding is offered in evidence by the plaintiff, as the sole foundation to sustain this action to recover back the identical money awarded to defendant's assignee in that proceeding?

4. The Pennsylvania statute is simply an attempt to avoid giving full faith and credit to the record from West Virginia. The case of Cole v. Cunningham, 133 U. S. 107, is an emphatic affirmance of our position. The majority of the court there held that a creditor might be stayed by injunction from prosecuting a suit in another state before final judgment. Three judges dissented from even this concession. But the opinion of the court, as well as of the three dissenting judges, emphasized the doctrine that a creditor having once obtained a judgment in a foreign court, the matter cannot be further litigated in the court of a different state where the parties reside.

*Mr. Johns McCleave* (with him *Mr. A. E. Anderson,*), for the appellee:

Arguments.

1. The proviso to § 5, act of April 15, 1845, P. L. 460, prohibiting the attachment of the wages of labor, is a general law applicable to all judgments, whether in the Common Pleas or on the docket of a justice: Catlin v. Ensign, 29 Pa. 264; Smith v. Brooke, 49 Pa. 147. The only exception to this proviso was made by the act of May 8, 1876, P. L. 139, giving aldermen and justices jurisdiction to attach wages of labor for boarding, not exceeding four weeks. Moreover, the general exemption by said proviso cannot be waived by the laborer: Firmstone v. Mack, 49 Pa. 387. It was to break up the evasions of this proviso that the act of May 23, 1887, P. L. 164, was passed.

2. The law of West Virginia provides no exemption for non-residents, and gives full jurisdiction to justices of the peace, in attachments against non-residents having property within the state: Code of W. Va., 468, pl. 193. Thus, a creditor, by going outside our jurisdiction, gained an advantage over the debtor which he could not have had under our law. But, there was jurisdiction in equity to restrain the creditor himself from prosecuting such a suit: Cole v. Cunningham, 133 U. S. 107. Yet even this equitable right was evaded by the creditor assigning his claim to a citizen of West Virginia, and the assignee issuing an attachment in his own name. This evasion of the proviso to the act of 1845, also, was met by the act of 1887.

3. Is said act unconstitutional? The legislature may legislate upon all subjects not prohibited by the constitution: Commonwealth v. Hartman, 17 Pa. 119; Sharpless v. Philadelphia, 21 Pa. 147, 160; Weister v. Hade, 52 Pa. 474; Penna. R. Co. v. Riblet, 66 Pa. 164, 169; by laws binding upon our own citizens, even when they are without our territorial limits: Chandler v. Main, 16 Wis. 422, 435; Story's Confl. of Laws, 540, § 21; Wheaton's Intern. Law, 132, 169, 176; People v. Tyler, 7 Mich. 161 (74 Am. Dec. 703); Adams v. People, 1 N. Y. 178. The act of 1887, considered, provides a legal remedy for the evasion of our laws, and thus supplements the equitable remedy recognized by Cole v. Cunningham, 133 U. S. 107. The jurisdiction of courts of equity depends upon statute: Dohnert's App., 64 Pa. 311. If, therefore, equity may restrain an evasion of our laws by one of our citizens, the legislature may

Arguments.

enact a statute for the same purpose, enlarging the remedy in equity.

4. Does said act violate the provision of the United States constitution that " full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state?" A judgment is the determination of the law in regard to the controversy: Blystone v. Blystone, 51 Pa. 373; Mahoning Co. Bank's App., 32 Pa. 158. The proceeding in West Virginia settled the controversy between Hunter and Sweeny, and of this we do not complain. The proceeding here is not to overthrow that judgment, but to recover the penalty placed upon the act of evasion of our law by which Hunter was enabled to bring his suit in West Virginia. Moreover, in the West Virginia proceeding, no process was served on Sweeny, as shown by the record thereof, and he did not appear in person or by attorney. Therefore, the judgment therein is of no force outside of West Virginia: Rogers v. Burns, 27 Pa. 527; Colvin v. Reed, 55 Pa. 375; Reel v. Elder, 62 Pa. 308; Scott v. Noble, 72 Pa. 115; Reber v. Wright, 68 Pa. 471; Empire Tp. v. Darlington, 101 U. S. 87; Bischoff v. Wethered, 9 Wall. 812.

5. Besides, where jurisdiction is obtained against a non-resident by the attachment of his property only, the judgment rendered thereon will have no extra-territorial force further than to bind the property attached and disposed of: Story's Confl. of Laws, § 549; Galpin v. Page, 18 Wall. 350; Cooper v. Reynolds, 10 Wall. 308; Pennoyer v. Neff, 95 U. S. 714, 725; Windsor v. McVeigh, 93 U. S. 274; Smith v. Woolfolk, 115 U. S. 143; St. Clair v. Cox, 106 U. S. 350; D'Arcy v. Ketchum, 11 How. 165; Bissell v. Wheelock, 11 Cush. 277; Pollard v. Baldwin, 22 Ia. 328; Dunbar v. Hallowell, 34 Ill. 168. How, then, can the present proceeding be called an attack upon the judgment in the attachment proceeding in West Virginia, when such judgment, under the circumstances, could not be the foundation of another judgment here? We gave to the record of the West Virginia proceeding full faith and credit, when we introduced it as record evidence of the defendant's prohibited act: Baxley v. Linah, 16 Pa. 241.

6. Does the act of 1887 violate the constitutional provision, " that all citizens of each state shall be entitled to all the priv-

ileges and immunities of citizens of the several states ? " The government of the United States, although, within the scope of its powers, it is supreme and beyond the states, can neither grant nor secure to its citizens rights or privileges which are not expressly or by implication placed under its jurisdiction: United States v. Cruikshank, 92 U. S. 542. The defendant as a citizen of Pennsylvania owes allegiance to her laws, one of which is that he must not take the wages of the laborer, and thus leave the laborer without support. He cannot, under the claim that he is a citizen of the United States, disregard the obedience which he owes to his own state : Bacon v. Horne, 123 Pa. 452. He has no right so to do, guaranteed to him by the constitution of the United States.

OPINION, MR. JUSTICE STERRETT :

The act of May 23, 1887, P. L. 164, under which this suit was brought declares:

" It shall be unlawful for any person or persons, being a citizen or citizens of this commonwealth, to assign or transfer any claim for debt against a resident of this commonwealth, for the purpose of having the same collected by proceedings in attachment in courts outside of this commonwealth, or to send out of this commonwealth, by assignment, transfer, or other manner whatsoever, either for or without value, any claim for debt against any resident thereof, for the purpose or with the intent to deprive such person of the right to have his personal earnings or property exempt from application to the payment of his debts according to the laws of this commonwealth, where the creditor and debtor and the person or corporation owing the money intended to be reached by such proceedings are within the jurisdiction of the courts of this commonwealth; and the person or persons assigning or transferring any such claim, for the purpose or with the intent aforesaid, shall be liable in an action of debt to the person or persons from whom any such claim shall have been collected by attachment or otherwise outside of the courts of this commonwealth, for the full amount of debt, interest and costs so collected; and the defendant or defendants therein shall not be entitled to the benefit of the exemption laws of this commonwealth upon any execution process issued upon any judgment recovered in any such action."

The purpose of the act, as expressed in its title, is "to secure to laborers within this commonwealth the benefit of the exemption laws of this commonwealth, and to prevent assignment of claims for the purpose of securing their collection against laborers outside of this commonwealth." The act was doubtless passed to prevent evasions of the proviso to the fifth section of our act of 1845, which declares "that the wages of any laborer, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer." This proviso is a general law, applicable to all judgments, whether entered in the Common Pleas or before a justice of the peace: Catlin v. Ensign, 29 Pa. 264. It has been held that the exemption given by it cannot be waived, and that aldermen and justices of the peace have no jurisdiction in attachment of wages, even upon a voluntary waiver by the party entitled to such exemption, because it would be against public policy to permit such waiver: Firmstone v. Mack, 49 Pa. 387. The exemption must therefore be regarded as grounded on public policy, looking to the protection of laborers and their families, even against their own voluntary acts.

It is claimed that the case at bar is an illustration of the evil intended to be remedied. Plaintiff and defendant are both citizens of this state. The former was employed as baggage-master on the Baltimore & Ohio railroad, the lines of which extend into this state, Maryland, and West Virginia, and the latter was engaged in the business of an undertaker, etc. Plaintiff became indebted to the defendant in the sum of about fifty dollars, which the latter, under the laws of this state, was unable to collect. It was alleged by plaintiff, and testimony was introduced to prove that defendant, in violation of the act of 1887, above quoted, assigned his account to G. O. Smith, a citizen of West Virginia, for the purpose and with the intention of having the amount thereof collected by attaching plaintiff's wages in the hands of his employer, the Baltimore & Ohio Railroad Co., in that state, the laws of which authorize such proceeding, but without the benefit of exemption; that in September, 1887, Mr. Smith, the assignee of the claim, attached plaintiff's wages in the hands of the railroad company, under the West Virginia laws; and the matter was so proceeded in that, on October 25th following, the money bound by the at-

tachment was paid to the justice before whom the proceeding was had, by the garnishee company, and the judgment was satisfied. The plaintiff had no notice of the attachment other than that given him by the garnishee, and did not appear either in person or by attorney. This suit was afterwards brought by him to recover the penalty specified in the act above quoted. The evidence, tending to prove that defendant in assigning his claim violated the provisions of the act, etc., was submitted to the jury under proper instructions, and a verdict in favor of plaintiff for $48.16 was rendered. On that verdict judgment was afterwards entered, and this appeal was taken by defendant.

By necessary implication, the verdict establishes all the facts necessary to constitute a violation of the provisions of the act of 1887, and the only question presented for our consideration is the constitutionality of the act. It is difficult to understand why an act, such as that in question, grounded on considerations of public policy, and intended to protect laborers in the use and enjoyment of their earnings, by forbidding violations or evasions of an exemption law by our own citizens, can be regarded as obnoxious to the provisions of the constitution, either state or federal. If the defendant, Hunter, for the purpose of evading the exemption law of his own state, had gone in person into a West Virginia court, and there, in his own name, commenced proceedings by attachment, for the purpose of thus enforcing payment of his claim (which he could not have done here), the plaintiff, independently of the act of 1887, would have had a remedy in equity to restrain him from prosecuting such attachment against the wages of the defendant in the hands of his employer. That remedy would have been in the courts of this state by injunction against the attaching creditor, not by an order directed to the West Virginia court. This principle appears to be recognized in Cole v. Cunningham, 133 U. S. 107, where the subject is fully and ably discussed by the present chief justice of the Supreme Court of the United States. It is there held that in proper cases (such, we think, as that under consideration), the constitution of the United States permits the equity courts of one state to control persons within their jurisdiction from prosecuting suits in another state; and that the exercise of that power is no violation of the constitutional provision which re-

quires that full faith and credit be given in each state to the judicial proceedings of every other state.

In Story's Eq. J., §§ 899, 900, the principle is thus stated:

" But, although the courts of one country have no authority to stay proceedings in the courts of another, they have an undoubted authority to control all persons within their own territorial limits. When, therefore, both parties to a suit in a foreign country are resident within the territorial limits of another country, the courts of equity of the latter may act in personam upon those parties, and direct them by injunction to proceed no further in such suit. In such a case, these courts act upon the acknowledged principles of public law in regard to jurisdiction. They do not pretend to direct or control the foreign court, but, without regard to the situation of the subject matter of the dispute, they consider the equities between the parties, and decree in personam according to those equities. . . . . It is now held that, whenever the parties are resident within a country, the courts of that country have full authority to act upon them personally, with respect to the subject of suits in a foreign country, as the ends of justice may require; and, with that view, order them to take, or omit to take any steps and proceedings in any other court of justice, whether in the same country or in any foreign country."

If a state court has the power to thus restrain its citizens, and prevent the evasion or nullification of its laws, what is there to prevent the legislature, which can enlarge or limit such jurisdiction, from enacting laws the effect of which will be similar to that of proceedings by injunction? It is the province of the legislature to provide a remedy for any and every existing evil; and it is certainly competent for it to say what that remedy shall be, whether by injunction, or by the imposition of a fine or penalty, or both concurrently. It may therefore provide a cumulative statutory remedy, in the shape of a penalty for the infraction or evasion of any law, and especially laws grounded on public policy. In a public point of view, it is particularly important that such laws should be obeyed and respected in spirit as well as in letter. The act of 1887 was doubtless passed with that view.

We are unable to see wherein it can be obnoxious to the constitutional provision that all " citizens of each state shall be

entitled to all the privileges and immunities of citizens of the several states:" Const. U. S., article IV., § 2. As a citizen of this commonwealth, the defendant owed allegiance to her laws, one of which forbade him to take, by any legal process, the plaintiff's earnings and apply them to his own claim, and thus perhaps leave the plaintiff and his family without the necessary means of subsistence. If he did do so, no matter how or where, he violated, both in letter and spirit, a law of his own state which he was in duty bound to obey; and there appears to be no reason why he should be permitted, under the claim that he is a citizen of the United States, to thus ignore his obligation to his own state, and the laws thereof not in conflict with the constitution and laws of the United States. The defendant, a resident of this state, assigned his claim to a resident of West Virginia, for the purpose of gaining an advantage which he could not enjoy under the law of this state. In doing this, he committed, as the verdict establishes, acts which are forbidden by the law under consideration. That law, in effect, compels him to make restitution, by way of penalty, to his aggrieved debtor. We think the court was right in holding that the act of 1887 is constitutional, and we discover no error in any of the rulings.

Judgment affirmed.