# Commonwealth *v.* Stambaugh, Appellant.

*Criminal law—Conspiracy—Separate trial.*

Where two persons have been indicted for conspiracy, but one has not been arrested, the other may be separately tried.

*Criminal law—Conspiracy—Evidence—Declaration of conspiracy.*

The acts and declarations of a conspirator, in furtherance of the common purpose, are evidence against himself, and are also evidence against his associates when they are made during the performance of the fraudulent transactions which constitute the crime charged, for they form a part of such transactions.

*Criminal law—Conspiracy—Wages—Attachment—Combination between nonresident and local creditor.*

A nonresident and a local creditor who combine to enforce the payment of a debt from the wages of labor by a proceeding expressly prohibited by the Act of May 23, 1887, P. L. 164, are guilty of conspiracy, and may be punished under the criminal law, by fine and imprisonment, although the act of May 23, 1887, gives a civil remedy to the person aggrieved.

*Appeals—Assignments of error.*

An assignment of error of the following form, "The learned court below erred in overruling the defendant's motion to quash the indictment," without more, violates the rules and will not be considered.

Argued Dec. 1, 1902. Appeal, No. 209, Oct. T., 1902, by defendant, from judgment of Q. S. Blair Co., on verdict of guilty in case of Commonwealth v. Lemuel Stambaugh. Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Indictment for conspiracy to violate the Act of May 23, 1887, P. L. 164, entitled "An act to secure to laborers within this commonwealth the benefit of the exemption laws of this commonwealth, and to prevent assignment of claims for the pur-

pose of securing their collection against laborers outside of this commonwealth." Before BELL, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty upon which the court sentenced the defendant to pay a fine of $40.00 and costs.

*Errors assigned* were (1) in overruling the defendant's motion to quash the indictment; (2–5) in admitting evidence as to the acts and declarations of W. W. Rogers, the defendant's co-conspirator; (7–17) various instructions.

*R. A. Henderson*, with him *J. F. Sullivan*, for appellant.— Where concert is part of a criminal act, it is not a subject of indictment as a conspiracy to commit the act: Nugent v. Com., 14 Pa. 226.

When a statute enacts an offense and prescribes a remedy, it is the only remedy: Garman v. Gamble, 10 Watts, 382; Com. v. Naylor, 34 Pa. 86; Hellings v. Com., 5 Rawle, 64; Hare v. Com., 92 Pa. 141; Com. v. Evans, 13 S. & R. 426.

The defendant could have taken his claim to West Virginia, and issued an attachment thereon, and just the same result would happen as did happen when Rogers, the assignee, had the attachment issued.

*W. C. Fletcher*, with him *W. L. Hicks*, district attorney, *H. C. Madden* and *N. B. Madden*, for appellee.—If two or more conspire to commit an offense punishable by statute, they can be convicted of the conspiracy, and it is not necessary to prosecute them for the statutory offense: Commonwealth v. McGowan, 2 Parsons' Select Equity Cases, 341.

In the legislative judgment wages belong rather to the laborer's family than to his creditors: Penna. Coal Co. v. Costello, 33 Pa. 241; Firmstone v. Mack, 49 Pa. 387; Sweeney v. Hunter, 145 Pa. 363; Steel v. McKerrihan, 172 Pa. 280.

A conspiracy to defeat the operation of a statute of a public nature is indictable at common law: 2 Bishop's New Criminal Law, 126; Hazen v. Commonwealth, 23 Pa. 355; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173; Twitchell v. Com., 9 Pa. 211.

OPINION BY ORLADY, J., March 12, 1903:

The indictment in this case substantially charges W. W. Rogers and Lemuel Stambaugh with fraudulently, maliciously and unlawfully conspiring, combining, confederating and agreeing together to assign and transfer to Rogers, a citizen of West Virginia, a debt of $9.25 due to Stambaugh by John L. Bardine, for the purpose and with the intent of attaching and collecting Bardine's wages for manual labor that were due or to become due from his employer, the Pennsylvania Railroad Company, thereby intending to cheat and defraud him of wages earned at Altoona in this commonwealth; and pursuant to this combination, conspiracy, and agreement, the named defendants did institute a suit and obtain a judgment in West Virginia, on which an attachment was issued and Bardine's wages for labor, then in the hands of the Pennsylvania Railroad Company, as his garnishees, etc., were seized and attached. The defendant, Rogers, was not arrested and the trial proceeded as to Stambaugh alone. The jury returned a verdict of guilty and he was sentenced to pay a fine of $40.00 to the use of the county and costs.

The soundness of a separate trial of one so indicted is established by abundant authority: 2 Whar. Prec. Indcts. sec. 607, note *b;* Heine v. Commonwealth, 91 Pa. 145.

The first assignment of error violates our rules to such an extent that it is not considered. The second, third and fourth assignments are without merit. The law is well settled that the acts and declarations of a conspirator, in furtherance of the common purpose, are evidence against himself, and are also evidence against his associates when they are made during the performance of the fraudulent transactions which constitute the crime charged, for they form a part of such transactions: Roscoe, Crim. Ev. 415; 3 Chitty, Crim. L. 1143; Commonwealth v. Bartilson, 85 Pa. 482; Heine v. Commonwealth, supra; Weil v. Cohn, 4 Pa. Superior Ct. 443; Commonwealth v. Zuern, 16 Pa. Superior Ct. 588.

From the undisputed evidence in the case it appears that the scheme arranged by Rogers, (who advertised as a business, protective and collection agency, notary public and pension attorney of Wheeling, West Virginia), in which he was joined by Stambaugh, his codefendant in this case, was palpably a deliber-

ate attempt to frustrate the aim and purpose of our statutes, prejudice the public, and oppress Bardine by depriving him of money and property, which our laws regard as absolutely exempt from seizure by creditors and which the laborer could not lawfully release. It could not have any other intendment. The foreign collector and local creditor unlawfully combined to enforce the payment of a debt from the wages of labor, by a proceeding which is specifically prohibited by statute. The assignment of the claim by Stambaugh to Rogers to enable Rogers to bring suit in West Virginia, though absolute on its face, was admitted to be without any consideration and was meaningless as between themselves, because Stambaugh considered the claim his own property until Rogers paid him fifty per cent of the amount collected. The device was deemed necessary for the reason that Stambaugh could not have recovered in his own name even if he had brought suit in another state: Sweeny v. Hunter, 145 Pa. 363; Galbraith v. Rutter, 20 Pa. Superior Ct. 554. They conspired to do in this indirect way that which neither could have done alone, and were to share equally in the fruits of their project. It is no answer to say that the debt claimed by Stambaugh was in fact due and unpaid, for Stambaugh knew, or was conclusively bound to know, that it could not be collected in this commonwealth from Bardine's wages of labor. The conspiracy as designed and forwarded disturbed the course of our administration of law, was against public policy, and was directed against a citizen and the public at large. Whenever an act has a tendency to prejudice the public by injuring and cheating the unwary, it is indictable: Clary v. Commonwealth, 4 Pa. 210. The costs and expenses incident to defending such a suit in a foreign state would necessarily prevent all resistance to securing a judgment. Such a transaction is not a civil contract but a criminal conspiracy and is easily within the old definition of a cheat, viz: deceitful practices in defrauding, or endeavoring to defraud another of his known right by some wilful device contrary to the plain rules of common honesty: Hawkins's Pl. Cr. C. 23. A conspiracy to cheat is as clearly criminal as a conspiracy to steal (Rhoads v. Commonwealth, 15 Pa. 272), and when the object of the combination is to cheat an individual by whatever means, it is obnoxious to the criminal law: Twitchell v. Commonwealth, 9 Pa. 211. If the motive of the

confederates be to oppress, the means they use be unlawful or the consequences to others be injurious, their confederation becomes a conspiracy: Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173.   The gravity of the case is the more apparent when we consider that a very large number of similar cases were contrived by Rogers—with other local creditors as his coconspirators—and resulted in attaching the wages of a large number of laboring men, whose sole means of support for their families depended upon the prompt and regular receipt of their wages of manual labor.

The legislature of this commonwealth has been ever watchful of the interests of our laboring classes.   The 5th section of the Act of 1845, P. L. 459, declares that the wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer.   It was the intention of this act to secure to the manual laborer by profession and occupation, the fruits of his own work for the subsistence of himself and family, and it was not designed to protect the contracts of those who speculate upon or make profit out of the labor of others: Heebner v. Chave, 5 Pa. 115.   Such wages shall not be intercepted by creditors but shall go to supply the wants of the laborer and his family: Smith v. Brooke, 49 Pa. 147.   To prevent evasions of this beneficent provision, and to afford additional security to the exemption previously granted, the Act of May 23, 1887, P. L. 164, was enacted.   Its title declares it to be "An act to secure to laborers within this commonwealth the benefit of the exemption laws of this commonwealth, and to prevent assignment of claims for the purpose of securing their collection against laborers outside of this commonwealth."   See Sweeny v. Hunter, supra.

The legislative intention has been so conspicuous that the courts have declared that the provisions of the act of 1845 could not be waived by the laborer, and his attempt to do so would be void, for the reason that if permitted it would bring on inconvenience to employers and tempt weak debtors to beggar their families in behalf of sharp and grasping creditors: Firmstone v. Mack, 49 Pa. 387.   The exemption is regarded as founded on public policy, looking to the protection of the laborers and their families even as against their voluntary act:

Sweeny v. Hunter, supra; Steel v. McKerrihan, 172 Pa. 280. The act was intended to reach all judgments whether entered in the common pleas or on the docket of a justice of the peace: Catlin v. Ensign, 29 Pa. 264. The wisdom of such legislative protection to laborers is more than vindicated by the conditions unfolded by this record. The object being unlawful, the offense was complete the moment the conspiracy was made: Hazen v. Commonwealth, 23 Pa. 355.

The thirteenth, fourteenth, fifteenth, sixteenth and seventeenth assignments represent excerpts from the charge which are unfairly separated from the context and should be considered with the whole charge, in which the case was fully and fairly submitted to the jury in connection with the answers to the defendant's twelve points submitted for special instruction.

The act of 1887 declares it to be unlawful for any person to assign or transfer any claim for debt against a resident of this commonwealth for the purpose of having the same collected in courts outside this commonwealth for the purpose or with the intent to deprive such person of the right to have his personal earnings or property exempt from application to the payment of his debts according to the laws of this commonwealth where the creditor or debtor and the person or corporation owning the money intended to be reached are within the jurisdiction of the courts of this commonwealth. It cannot be questioned that the combination of these defendants necessarily tended to oppress individuals in unlawfully subjecting them to the power of these confederates, as well as to prejudice the public in instigating vexatious, expensive, and unjust litigation against our citizens, which, as suggested by Chief Justice GIBSON in Commonwealth v. Carlisle, Brightly, 36, "has the double effect of doing a private wrong and being a public mischief." See also 2 Russell on Crimes, 553, and 2 Arch. P. & P. 1829, and notes. Such a conspiracy is indictable at common law, and the provision in the act of 1887, namely, "that the person or persons assigning or transferring any such claim for the purpose or with the intent aforesaid shall be liable in an action of debt to the person or persons from whom any such claim shall have been collected by attachment or otherwise outside of the courts of this commonwealth for the full amount of the debt, interest and costs so collected," simply

gave to the person aggrieved by such a collection, a cause of action for compensation when the wrong against him had been consummated. It was not intended as a forfeiture, nor penalty as punishment for the crime of conspiracy against ʼthe peace and dignity of the commonwealth. To hold otherwise would be to tolerate such unlawful and deceitful practices up to the point of a return of money made on an execution against the laborer and permit the wrong against the public to go unpunished. Both fine and imprisonment may be imposed at common law on conviction of conspiracy, and section 128 of the criminal code of 1860 does not, nor was it intended to, interfere with the indictment and punishment of a common-law conspiracy. We have not before us the reasons of the trial judge in fixing the sentence imposed, but we assume that he was moved to leniency by the jury's recommendation of this defendant to the mercy of the court. Nevertheless, if there were error in this respect we might set aside the sentence and impose a new one, or send the record back for that purpose: Wilson v. Commonwealth, 96 Pa. 56.

The affirmation of the defendant's twelfth point was all that was necessary to fairly direct the attention of the jury to the meager evidence as to his good character quoted in the eighteenth assignment. The assignments of error are overruled, the judgment is affirmed and the record is to be remitted so that the sentence imposed will be complied with.