## Ansert v. Household Finance Corporation

*Delbert T. Kirk*, for plaintiff.

*J. Horace Churchman*, for defendant.

Bok, P. J., February 19, 1940.—This is a bill in equity. The prayer is that I enjoin defendant from proceeding with a certain action at law instituted by it in Camden, New Jersey, to attach complainant's wages, and direct it to withdraw that action.

### Findings of Fact

1. Complainant is a resident of Pennsylvania.

2. Respondent was incorporated under the laws of the State of Delaware, and has its principal place of business in Philadelphia, as a small loans company.

3. On December 6, 1930, complainant and his wife borrowed $300 from respondent and signed a note-agreement therefor.

4. Complainant has been for nine years and is presently employed by J. Evanson & Sons, Inc., located in Camden, New Jersey, and makes $26.50 a week. This concern has no office in Pennsylvania.

5. On October 18, 1939, respondent, by its attorney in New Jersey, obtained judgment against complainant and his wife in the Camden City District Court, New Jersey, and petitioned that court for an attachment against complainant's wages in the hands of J. Evanson & Sons, Inc., in the amount of 10 percent thereof.

6. On November 14, 1939, an order so attaching complainant's wages was granted by the said court and on November 20, 1939, a copy of this order was served on J. Evanson & Sons, Inc.

7. The amount of respondent's judgment is $275.39, with costs of $17.77.

### Discussion

Complainant's theory is that his wages are protected from execution by the Acts of April 15, 1845, P. L. 459, and of May 23, 1887, P. L. 164, and that a court of equity may operate in personam against a Pennsylvania resident to prevent it from violating the exemption law here by proceeding in another State where the law is different and allows an execution against wages.

This theory has some plausibility. The public policy of the Act of 1845, supra, is profound. Its purpose is to protect not only the laborer so that he will not become a public charge, but also to protect employers from the importunities of the creditors of their employes: Little v. Balliette, etc., 9 Pa. Superior Ct. 411 (1899). This protection of the laborer is so important that it has been held that the laborer himself may not waive it (Firmstone et al. v. Mack, 49 Pa. 387 (1865)), although he may waive the $300 exemption allowed him under the Act of April 9, 1849, because it is personal: Bowman v. Smiley, 31 Pa. 225 (1858).

There is no case in this State which governs, but I am asked to enjoin on the analogy of Sweeny v. Hunter, 145 Pa. 363 (1891), and Galbraith v. Rutter, 20 Pa. Superior Ct. 554 (1902). In both of these cases the wages were earned in Pennsylvania, and the debt was assigned to West Virginia for suit and attachment against wages in the hands of the railroad company, which operated in both States. This was held to be an evasion of the Act of 1887. Neither case is in point, but there is dictum in both that had the creditor gone to West Virginia personally and sued, equity would restrain him independently of the act.

The Act of 1845, supra, and its title read as follows:

"An act to secure to laborers within this Commonwealth the benefit of the exemption laws of this Commonwealth, and to prevent assignment of claims for the purpose of securing their collection against laborers outside of this Commonwealth."

"That the wages of any laborers or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer."

The Act of 1887, supra, reads as follows:

"That, from and after the passage of this act, it shall be unlawful for any person or persons, being a citizen or citizens of this Commonwealth, to assign or transfer any claim for debt against a resident of this Commonwealth for the purpose of having the same collected by proceedings in attachment in courts outside of this Commonwealth, or to send out of this Commonwealth by assignment, transfer or other manner whatsoever, either for or without value, any claim for debt against any resident thereof, for the purpose or with the intent to deprive such persons of the right to have his personal earnings or property exempt from application to the payment of his debts according to the laws of this Commonwealth, where the creditor and debtor and the person or corporation owing the money intended to be reached by such proceedings are within the jurisdiction of the courts of this Com-

monwealth; and the person or persons assigning or transferring any such claim, for the purpose or with the intent aforesaid, shall be liable in an action of debt to the person or persons from whom any such claim shall have been collected by attachment or otherwise outside of the courts of this Commonwealth for the full amount of debt, interest and costs so collected, and the defendant or defendants therein shall not be entitled to the benefit of the exemption laws of this Commonwealth upon any execution process issued upon any judgment recovered in any such action."

The instant case, however, is not within these provisions, since the debtor, creditor, and garnishee are not all within our jurisdiction. The Act of 1887 was passed to prevent evasions of the Act of 1845, and it might be said that a procedure not falling within its terms cannot be considered an evasion. No "purpose or intent" to evade has been pleaded in the bill: Rumford v. Stevens, 12 Dist. R. 569. Furthermore, if our case is not within the act, there is no force in the court's statement in Galbraith v. Rutter, supra, p. 558, that: "The passage of the act [i. e., the Act of 1887] itself and the construction put upon it in Sweeny v. Hunter, supra, render the cases of Bolton v. Pennsylvania Co., 88 Pa. 261, and Morgan v. Neville, 74 Pa. 52, inapplicable in this connection."

The two cases just mentioned in this quotation hold that the Act of 1845 is not part of the contract and cannot follow the debt into the foreign State, and that the laws for process of attachment and execution are part of the remedy and are to be governed by the lex fori. See also A. L. I. Restatement of Conflict of Laws, §600, p. 717. They were both decided prior to the passage of the act in question, and must therefore govern in a case not covered by it.

I do not feel that our public policy, deeply rooted in our law and humane as it is, can be invoked when the employer is in New Jersey, when the labor was done there,

and when the wage-debt is accordingly there too. It is difficult to see how our law has been evaded, for had there been no Act of 1845 respondent could have done no more than sue here and transfer his judgment to New Jersey for collection. In the cases where injunctive relief has been accorded there were two fora where collection was possible, and the creditor chose the one in which a wage attachment was permissible. That is clearly an evasion. Here there is but one forum where collection may be had and it is not ours. The Act of 1887 appears to be a compendium of those elements which must obtain before the Act of 1845 can be said to be evaded, and measures the protection to be afforded under it. Where an element is missing there is no protection. This is another way of saying that he is not a "laborer" within the meaning of the act, who lives here but earns his living abroad from a foreigner to our jurisdiction.

It might be noted in passing that New Jersey has a public policy of its own in such cases, since wages in the amounts here involved may be attached only up to 10 percent: Rev. Stat. of N. J., 1937, sec. 2:32—180, 181. A voluntary arrangement with respondent to that extent should eliminate the pleaded possibility that the annoyance to his employer of this attachment will cost complainant his job. I do not feel further impelled to aid him in evading his obligation than I do to declare that respondent has, under all circumstances, evaded our law.

### Conclusions of law

1. There is no evasion of the Acts of 1845 and 1887.
2. These acts do not apply.
3. The attachment is a matter of remedy and is governed by the lex fori, namely, New Jersey.

### Decree

And now, February 19, 1940, the prayer of complainant is refused and the bill is dismissed.