## Zeiders et al. v. Lewis Apparel Stores, Inc.

*Hare & Hare* and *William F. Zinger*, for plaintiffs.

*Robert C. Haberstroh* and *Schermer, Goldstein & Millstone*, for defendant.

KLEPSER, P. J., September 24, 1952.—Plaintiffs, Lester L. Zeiders, Lynn W. Stehley, Wilbur C. McCartney and the Pennsylvania Railroad Company, filed a bill in equity, praying for an injunction to enjoin defendant, Lewis Apparel Stores, from further prosecuting an action now pending in the State of Ohio.

Defendant was organized under the laws of the State of New York and subsequently registered to do business in this Commonwealth and Ohio. Plaintiffs Lester Zeiders and Lynn Stehley, domiciled and residing in this Commonwealth, entered into a contract with defendant's branch store at Altoona, Pa., upon which defendant has instituted an action in the State of Ohio by moving against plaintiff, the Pennsylvania Railroad Company, as garnishee of individual plaintiffs' employer.

Plaintiffs bring this bill on behalf of themselves, and for a class so numerous as to make it impractical to join them individually as parties, contending that they are entitled to the protection of this court of equity as defendant has transferred its claim against them to Ohio for the purpose of attaching their wages, which is expressly prohibited in this Commonwealth (Act of May 23, 1887) and which act Ohio has declared it will not respect out of comity since in that State wages of an employe can be attached for such a claim.

It was also alleged on behalf of plaintiffs' class that it is the intention of defendant to institute other such action in Ohio, with the purpose and intent of evading the exemption laws of this Commonwealth and thus

deprive residents of Pennsylvania the protection of our laws by reason of a legal technicality.

On June 16, 1952, this court entered a preliminary injunction, enjoining defendant, until further order of the court, from prosecuting the proceedings against plaintiffs and other employes of the Pennsylvania Railroad Company similarly situated for the purpose of effecting an attachment of their wages thereby denying individual plaintiffs exemption of their wages from attachment for debt according to the laws of Pennsylvania.

Defendant is now asking this court to rule on preliminary objections to the bill. Defendant avers first that plaintiffs do not have a proper cause in equity. Secondly, that they have an adequate remedy at law. Third, that defendant is not required to answer since it is not a resident or citizen of the Commonwealth of Pennsylvania, and lastly, that the pleadings are inconsistent.

## Discussion

It is plaintiffs' contention that the court of equity has jurisdiction to enjoin defendant, which is registered to do business in Pennsylvania, over which it has obtained personal jurisdiction within the Commonwealth of Pennsylvania, from evading our salary exemption laws by suits in another jurisdiction on debts contracted while doing business in Pennsylvania.

First of all, we must state that this Commonwealth does have a statute which prohibits the attachment of wages of employes in the hands of their employer.

Section (5) of the Act of April 15, 1845, P. L. 459, 42 PS §886, which is a supplement to the Act of 1836, entitled "An Act Relating to Execution", contains the following proviso:

". . . provided, however, That the wages of any laborers, or the salary of any person in public or

private employment, shall not be liable to attachment in the hands of the employer."

This statute was followed by the Act of May 23, 1887, P. L. 164, 12 PS §2175, entitled:

"An Act to secure to laborers within this Commonwealth the benefit of the exemption laws of this Commonwealth, and to prevent assignment of claims for the purpose of securing their collection against laborers outside of this Commonwealth". This act provides that it shall be unlawful for any person, being a citizen of Pennsylvania, to assign or transfer any claim for debt against a resident of Pennsylvania for the purpose of having the same collected by proceedings in attachment in courts outside of Pennsylvania, or to send out of Pennsylvania by assignment, transfer or other manner whatsoever, any claim for debt against any resident thereof for the purpose or with the intent to deprive such person of the right to have his personal earnings or property exempt from application to the payment of his debts according to the laws of Pennsylvania, where the creditor and debtor and the person owing the money intended to be reached by such proceedings are within the jurisdiction of the courts of Pennsylvania.

This act also provides that the person assigning or transferring any such claim, for the purposes and with the intent aforesaid, shall be liable in an action of debt to the person from whom any such claim shall have been collected by attachment or otherwise outside of the courts of Pennsylvania for the amount of debt, interests and costs so collected, and defendant therein shall not be entitled to the benefit of the exemption laws of Pennsylvania in any execution process issued upon any judgments recovered in any such action.

The question now arises as to whether or not the action of debt provided for in the Act of 1887 is the only cause of action left open for plaintiffs to pursue

and if not, whether or not such action constitutes an adequate remedy at law.

The purpose of the Act of 1887 was to prevent evasions of the Act of 1845, which provided that wages shall not be liable to attachment in the hands of the employer. Its dominating purpose was "to afford additional security to the exemption previously granted": Steel v. McKerrihan, 172 Pa. 280, 283 (1896). This act provided a right of action at law where payment of wages was made in judicial proceedings in a foreign jurisdiction under the circumstances set forth in the act. The act did not destroy the equity jurisdiction in Pennsylvania to enjoin further proceedings before payment, in violation of the 1845 Act. In Galbraith v. Rutter, 20 Pa. Superior Ct. 554, the court said concerning the Act of 1887, as follows:

"The dominating purpose of this legislation (which has been held to be constitutional, Sweeny v. Hunter, supra) is to prevent evasions of the Act of 1845 declaring that wages of any laborer shall not be liable to attachment in the hands of the employer: Steel v. McKerrihan, 172 Pa. 283. It is argued that the remedy furnished by the Act of 1887 is exclusive of all other proceedings which theretofore might have been brought by a debtor against a creditor for conduct covered by the Act. It is true, and it is conceded, that in the absence of the Act, the right to proceed in equity in personam, would obtain, but it is asserted that the existence of the Act denudes the plaintiff of his right to equitable procedure. The effect of the Act is to create a right to an action at law in the case of payment actually made in judicial proceedings in a foreign jurisdiction. It does not express intention to destroy the equity jurisdiction in Pennsylvania by which restraint may intervene before payment. Therefore, this legislation does not furnish an exclusive procedure preventing the filing of a bill to enjoin conduct

stamped by legislation as unlawful, and which has not reached consummation in actual payment. The passage of the Act itself and the construction put upon it in Sweeny v. Hunter, supra, render the cases of Bolton v. Pennsylvania Co., 88 Pa. 261, and Morgan v. Neville, 74 Pa. 52, inapplicable in this connection."

Equity courts in Pennsylvania have enjoined persons within their territorial jurisdictions from prosecuting attachment proceedings pending in courts in other States having the effect of evading the exemption laws in the following cases: Galbraith v. Rutter, 20 Pa. Superior Ct. 554 (1902); Prazich v. Alwine et al., 49 D. & C. 353.

The opinions in these cases were based upon a statement of equity jurisdiction by the Supreme Court of Pennsylvania in Sweeny v. Hunter, 145 Pa. 363 (1891), which, in turn, was based on the statement of equity jurisdiction made by the Supreme Court of the United States in Cole v. Cunningham, 133 U. S. 107 (1889).

These cases discuss the jurisdiction of a court of equity outside of Pennsylvania, beginning with the extensive survey of such jurisdiction made by the Supreme Court of the United States in Cole v. Cunningham.

The case of Cole v. Cunningham, supra, was the basis of the decision of the Pennsylvania Supreme Court in Sweeny v. Hunter, 145 Pa. 363 (1891). In this case an action of debt was brought under the 1887 Act, and judgment in favor of plaintiff was affirmed. Sweeny, plaintiff, was a citizen of Pennsylvania and an employe of the Baltimore & Ohio Railroad Company. He was indebted to Hunter, defendant, who was also a citizen of Pennsylvania. The indebtedness was assigned by defendant to a broker and real estate agent in West Virginia. The broker instituted an action in West Virginia and attached the wages of Sweeny, plaintiff, owing by the Baltimore & Ohio Railroad

Company, as garnishee. Judgment was entered pursuant to the railroad company's answer and in compliance therewith the railroad company paid into the justice's court the employe's wages, whereupon it was discharged as garnishee. Sweeny, the employe, then brought an action against his creditor, Hunter, under the provisions of the 1887 Act. The court said that the verdict of the jury established all the facts necessary to constitute a violation of the Act of 1887, and that the only question presented was the constitutionality of the act.

In reaching the conclusion that the act was constitutional, the court reasoned from the legal proposition that in the absence of the act, the equity courts had jurisdiction to enjoin evasions of Pennsylvania exemption laws by proceedings brought in another State. The court said that if the creditor, for the purpose of evading the exemption laws of Pennsylvania, had gone into West Virginia and in his own name commenced proceedings by attachment to enforce payment of his debt from wages, which he could not have done in Pennsylvania, plaintiff, independently of the Act of 1887, would have had a remedy in equity to restrain him from prosecuting such attachment against wages of the employe in the hands of his employer. The court said that this principle was recognized in Cole v. Cunningham, supra. The court said that it was there held that in proper cases such as this situation, the Constitution of the United States permits equity courts of one State to control persons within their jurisdiction from prosecuting suits in another State, and that the exercise of that power is no violation of the constitutional provision which requires that full faith and credit be given in each State to the judicial proceedings of every other State.

Equity jurisdiction to enjoin evasion of Pennsylvania's exemption laws by attachment of wages in

another State was restated in Galbraith v. Rutter, 20 Pa. Superior Ct. 554 (1902), notwithstanding the remedy provided by the Act of 1887, where there was an assignment of the claim to a person in another jurisdiction.

Since the courts of equity have jurisdiction to enjoin prosecution of an action brought for the purpose of evading the exemption provided by the Act of 1845, the court correctly held that it had jurisdiction to enjoin evasions of the Act of 1887, which was an act to secure the exemption provided by the Act of 1845.

Counsel contends that defendant did not evade Pennsylvania's exemption laws, reasoning that defendant instituted its *own* actions in the foreign jurisdiction—that no *transfer* or assignment of its claim was made to Ohio. It is conceded that most of the Pennsylvania cases which establish or affirm the jurisdiction of a court of equity to enjoin proceedings in a foreign jurisdiction for the purpose of evading the exemption laws of Pennsylvania involved factual situations in which there was an assignment of the debt by the Pennsylvania creditor to a person other than the creditor in the foreign State. However, these cases were decided by reasoning from the principle that a court of equity has jurisdiction to enjoin the creditor from instituting his *own* proceeding without an assignment to another person in the foreign jurisdiction.

In Sweeny v. Hunter, supra, at page 372, the court said that the court of equity could enjoin the creditor from instituting his own action in the foreign State as follows:

"If the defendant, Hunter, for the purpose of evading the exemption law of his own state, had gone in person into a West Virginia court, and there, in his own name commenced proceedings by attachment, for the purpose of thus enforcing payment of his claim (which he could not have done here), the plaintiff,

independently of the Act of 1887, would have had a remedy in equity to restrain him from prosecuting such attachment against the wages of the defendant in the hands of his employer. That remedy would have been in the courts of this state by injunction against the attaching creditor, not by an order directed to the West Virginia Court. This principle appears to be recognized in Cole V. Cunningham, 133 U. S. 107, where the subject is fully and ably discussed by the present Chief Justice of the Supreme Court of the United States. It is there held that in proper cases (such, we think, as that under consideration), the Constitution of the United States permits the equity courts of one state to control persons within their jurisdiction from prosecuting suits in another state, and that the exercise of that power is no violation of the constitutional provision which requires that full faith and credit be given in each state to the judicial proceedings of every other state."

The proposition that the creditor may be enjoined from prosecuting his own action in a foreign State for the purpose of evading the exemption laws of Pennsylvania has evidently been so well founded in the law, as reviewed by the Supreme Court of the United States in the case of Cole v. Cunningham, supra, which case was the basis for application of the doctrine by the Supreme Court of Pennsylvania in the case of Sweeny v. Hunter, supra that the cases before the Pennsylvania courts involved situations where there was an assignment and it was contended that the operation of the Act of 1887 in some way deprived equity courts of their preëxisting jurisdiction in such cases. This is also evidenced by the remark of Orlady, J., in the case of Commonwealth v. Stambaugh, 22 Pa. Superior Ct. 386 (1903), that the device of an assignment of a claim was adopted inasmuch as the creditor in Pennsylvania could not have attached wages of a

Pennsylvania resident in his own name even if he brought his own suit in the foreign State. The authorities cited by Orlady, J., were the cases of Sweeny v. Hunter and Galbraith v. Rutter, supra.

The court said that such attachment in the foreign State was prejudicial to the interests of the community and the rights of individuals. The court said at page 389:

"The conspiracy as designed and forwarded disturbed the course of our administration of law, was against public policy, and was directed against a citizen and the public at large. Whenever an act has a tendency to prejudice the public by injuring and cheating the unwary, it is indictable: Clary v. Commonwealth, 4 Pa. 210. The costs and expenses incident to defending such a suit in a foreign state would necessarily prevent all resistance to securing a judgment."

The court said at page 390:

"The gravity of the case is the more apparent when we consider that a very large number of similar cases were contrived by Rogers—with other local creditors as his co-conspirators—and resulted in attaching the wages of a large number of laboring men, whose sole means of support for their families depended upon the prompt and regular receipt of their wages of manual labor."

In the case at bar the sale was made in Altoona in the Commonwealth of Pennsylvania. The transaction naturally was entered here where the contract was made and concluded. How then could the debt turn up in Ohio unless it were "sent out" or "transferred and entered" there?

In Steel v. McKerrihan et al., 172 Pa. 280 (1896), the creditor's instituting his own action in the foreign State was held to be a violation of the Act of 1887, depriving the creditor of his exemption in a suit

brought against him. The Lewis Apparel Stores, Inc., likewise violated the act when it "sent out", "transferred and entered" or by *assignment, transfer or other manner whatsoever* (Act of 1887) the debts to Ohio. Defendant's argument that it was already in Ohio when the debts were contracted does not excuse defendant from amenability to the laws of Pennsylvania.

The 1887 Act was entitled "An Act to secure to laborers within this Commonwealth the benefit of the exemption laws of this Commonwealth, *and* to prevent assignment of claims for the purpose of securing their collection against laborers outside of this Commonwealth." (Italics supplied.) It will be noted that the title of the act contains two divisions. The first subject is the securing to laborers within Pennsylvania the benefit of its exemption laws. The other part of the title concerns prevention of assignment of claims for the purpose of securing their collection outside of Pennsylvania. The first part of the title is sufficient to support that part of the act which makes it unlawful to transfer or send out of Pennsylvania by assignment, transfer or other manner whatsoever, any claim for the purpose of evading the exemption laws. In Prazich v. Alwine, supra, the court entered an injunction where the creditor caused an exemplified copy of the record of his judgment to be filed out of the State. The court found as a fact that the creditor caused the judgment to be "sent out" of Pennsylvania and "transferred" and entered in the West Virginia court. It concluded as a matter of law that plaintiff thereby violated the Act of 1887. There was no assignment involved.

In the bill of complaint against Lewis Apparel Stores, Inc., it was alleged that defendant instituted its own suits in Ohio for debts for goods sold and delivered by it in Pennsylvania. It was alleged that

defendant thereby transferred its claims to persons outside of Pennsylvania for the purpose of evading the exemption laws. It was not alleged that the claims were transferred to persons other than defendant, or to persons having an interest apart from defendant. The word "transferred", as above referred to, merely means to bear over. The Act of 1887 was passed with the view of having it obeyed "in spirit as well as in letter": Sweeny v. Hunter, supra. It is the equivalent to other words used in the act, i.e., to send out. The act makes it unlawful to send out by "transfer or any other manner whatsoever." The transfer here may have been a sending out of the claims to defendant's attorneys, to the court in Ohio, to its employes in its office in Ohio, or to its subsidiary or related corporation, if any, in Ohio. The person to whom it was sent out is immaterial. The claims would have to be physically carried beyond the territorial limits of Pennsylvania in order to have the suits instituted there, or the nonphysical claims would in some manner be carried over to some person in Ohio in order that suits could be instituted upon them.

The phrase, "to send out", merely means "to cause to be conveyed". When a person himself carries his claim into the foreign State and there commences attachment proceedings against wages, he "sends out" his claim within the meaning of those words in the act. See State v. Dittmar, 120 Ind. 54, 22 N. E. 88.

The title of the Act of 1887 is sufficient to make it unlawful for a creditor to institute proceedings in his own name in a foreign jurisdiction. The remedy under the act is applicable where a creditor does institute an action in his own name in the foreign State. For the purposes of the present proceeding, we are not concerned with the remedy provided in the act except that if the remedy is not applicable in this case then there is no remedy at all provided by law for the em-

ploye except equitable jurisdiction to prevent payment in the foreign proceeding and criminal liability on the part of the creditor for cheating and defrauding the employe of his exemption rights.

The mere fact that a remedy at law should exist is not sufficient to oust equity jurisdiction. The real question is whether that remedy is full, complete and adequate. The costs and expenses incident to defending these actions in a foreign State would as a practical matter prevent all resistance to securing a judgment and attaching wages. The Ohio courts would not by comity enforce the exemption laws of Pennsylvania. This was so averred, being foreign law, in paragraph 12 of the bill of complaint.

Unless the Pennsylvania court should exercise its equity jurisdiction and grant an injunction in these cases, then as a practical matter the wages will be paid by the railroad company as garnishee in the Ohio proceedings and such payment will be entitled to full faith and credit under the Constitution, as hereinafter referred to. The net effect of failure to exercise equity jurisdiction in this situation would be that the residents of Pennsylvania would be deprived of protection given them according to the public policy of Pennsylvania and the creditor would be able to evade the laws by which it is bound.

Also, any remedy at law would be inadequate in this case by reason of the multiplicity of suits required to enforce it. In this action numerous suits have been brought in Ohio and, as averred in the bill of complaint, it is the intention of defendant to institute innumerable suits in the State of Ohio in similar cases against employes of the Pennsylvania Railroad Company with the intention in all such cases of evading the exemption laws of the Commonwealth of Pennsylvania. It is a general principle of law that where the nature of the wrong is such that to remedy it at

law would require numerous suits to be brought in order to secure complete relief, the necessity of such suits shows the inadequacy of the remedy at law and confers equitable jurisdiction: Henry, Equity Jurisdiction and Practice in Pennsylvania (1933), §41, page 74.

For these reasons we do not hesitate to hold that defendant's objection to this matter being heard in equity is not well founded and for the same reasons we conclude that if the facts as averred by plaintiffs in their bill are true, they would not have a full, complete and adequate remedy at law.

The third objection to plaintiffs' bill sets forth that defendant should not be required to file an answer since it can avail itself of the defense of being a foreign corporation and, as such, not being a resident or citizen of Pennsylvania within the meaning of the acts of assembly referred to in plaintiffs' bill, the suit cannot be successfully maintained in this Commonwealth.

It was alleged in the bill that defendant was registered to do business in Pennsylvania in 1938 in accordance with the Business Corporation Law of 1933. By virtue of section 1010 of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS §2852-1010, a foreign business corporation registered to do business in Pennsylvania "shall enjoy the same rights and privileges as a domestic business corporation, *but no more*," (Italics supplied) and "shall be subject to the same liabilities, restrictions, duties and penalties now in force or hereafter imposed upon domestic business corporations, to the same extent as if it had been organized under this Act to transact business set forth in its certificate of authority."

The purpose of the section was to subject foreign corporations to the same restrictions as were imposed on domestic corporations.

For all practical purposes a corporation registered under the Business Corporation Law is a resident of Pennsylvania. See Haddonleigh Estates, Inc., et al. v. Spector Motor Service, Inc., 41 D. & C. 246.

Since a domestic corporation is bound by both the Acts of 1845 and 1887, defendant, as a foreign corporation, is also bound thereby. By virtue of the Business Corporation Law defendant is subject to restrictions and duties of the same extent as if it had been a citizen by incorporation under the act. It is therefore subject to the laws governing citizens and the jurisdiction of courts of equity to enjoin its citizens from evading its laws, especially with respect to business done in Pennsylvania, as here, where the debts to which the exemption applied were for goods sold and delivered at defendant's stores in Pennsylvania.

We need only to state that the Act of 1845 does not refer to citizenship. It prohibits all persons by it, not just residents or citizens, from attaching wages. If there is an evasion of the laws by anyone upon whom the court can serve its process, then he may be enjoined from evading such laws by acts done outside of the State. This court has proper jurisdiction over defendants by reason of the service of the bill and so long as defendants remain in this Commonwealth they are subject to comply with, as well as receive, the benefits of our laws. We cannot agree with defendant that it occupies a special position in this county in that it is not subject to the authority of our courts.

The final objection made to plaintiffs' bill is that several of the averments are inconsistent, thus making it incapable of being properly answered. Defendant refers to paragraphs 6, 8 and 13 of the bill. Paragraph 6 states that defendant is a corporation organized under the law of the State of New York and registered to do business in the Commonwealth. In

paragraph 8 it is averred that the action instituted in the State of Ohio was the suit of defendant and in paragraph 13, it is alleged that defendant "transferred its claims against plaintiffs who are residents thereof to persons or corporations outside of this Commonwealth."

Upon a superficial glance at such averments, it must be conceded that they do appear to be inconsistent. In one paragraph it is stated that defendant brought the suit in Ohio. Then in another paragraph it is averred that defendant transferred its claim from Blair County to persons or corporations in Ohio for the purpose of bringing a suit. However, in view of the language as used in the act prohibiting the assignment of claims to a foreign court for the purpose of evasion of our exemption laws we feel that it is obvious what plaintiff meant by such averments.

As stated above, "to transfer", "send out", etc., merely means "to cause to be conveyed" and when a person himself carries his claim into the foreign State and there sues thereon, he thereby transfers his claim within the meaning of the act. Taking this view, plaintiffs' pleadings no longer appear inconsistent and for this reason we cannot sustain the objection.

After a careful consideration of each exception we conclude that there is not sufficient merit to stay the proceedings and accordingly dismiss defendant's preliminary objections to plaintiffs' bill in equity.

### Final Decree

And now, December 31, 1952, it is ordered and decreed that defendant, Lewis Apparel Stores, Inc., its officers, agents and employes, are perpetually enjoined from instituting or prosecuting an action in the courts of Ohio against individual plaintiffs and other employes of the Pennsylvania Railroad Company, garnishee therein, similarly situated, for the

purpose of effecting an attachment of their wages, thereby denying them exemption of their wages from attachment for debt according to the laws of the Commonwealth of Pennsylvania, said injunction to continue so long as the laws of the Commonwealth of Pennsylvania remain in their present status with reference to the attachment proceedings.