SINGER MANUFACTURING COMPANY v. CHARLES R.
FLEMING.

FILED MARCH 6, 1894.   No. 5662.

1. **Constitutional Law**: WAGES OF LABORERS. The act to pro-
vide for the better protection of the earnings of laborers, serv-
ants, and other employes of corporations, firms, or individuals
engaged in interstate business, Laws of 1889, chapter 25, is not
in conflict with the constitution of Nebraska, either as being
broader than its title or as being prohibited class legislation.

2. ———: ———: DAMAGES. Nor does the act seek to impose a
penalty for the benefit of an individual. The recovery provided
for in the act, of the debt, costs, expenses, and attorney's fee, is
simply a recovery of compensatory damages and not a penalty.

3. ———. Whether the act is valid, in so far as it makes its violation
a crime, is not decided; that portion of the act not being so con-
nected with the rest as to affect the validity of the whole act.

4. ——— Nor is the act in conflict with section 1 of article 4 of the
constitution of the United States, requiring that full faith and
credit shall be given in each state to the public acts, records,
and judicial proceedings of every other state.

5. **Garnishment of Wages in Other States**: FOREIGN COR-
PORATIONS. A foreign corporation, having a place of business
in Nebraska, which institutes, in another state, attachment pro-
ceedings and seizes the earnings of a citizen of Nebraska, exempt
under the laws of Nebraska, is subject to the operation of the
act; the contract out of which the proceedings arose having
been made in Nebraska and being here performable.

6. ———: ———: EXEMPTIONS: CONFLICT OF LAWS. While un-
der the laws and decisions of Iowa a judgment in a proceeding
by foreign attachment, whereby earnings of the defendant, a resi-
dent of Nebraska, earned in Nebraska and payable there, are
seized and applied to the payment of the defendant's debt, must
be treated as within the jurisdiction of the Iowa courts, still
the *situs* of said earnings, for the purpose of determining the
right to exemption, is Nebraska. *Mason v. Beebee*, 44 Fed. Rep.,
556, followed.

ERROR from the district court of Douglas county. Tried
below before DOANE, J.

The opinion contains a statement of the facts.

*Breckenridge, Breckenridge & Crofoot,* for plaintiff in error:

The law upon which the judgment is based is unconstitutional because the act is broader than its title. The penalties provided in section 4 of the act are clearly beyond the scope of, and not indicated by the scope of, the title of the act. (Sec. 11, art. 3, Constitution; *White v. City of Lincoln,* 5 Neb., 505; *Ex parte Thomason,* 16 Neb., 238; *Messenger v. State,* 25 Neb., 674; *Touzalin v. City of Omaha,* 25 Neb., 817.)

The law is unconstitutional also because it imposes a penalty which is not contributed to the school fund. (Sec. 5, art. 8, Constitution; *Atchison & N. R. Co. v. Baty,* 6 Neb., 37, 45.)

The act is unconstitutional, as a vicious example of class legislation. (Sec. 15, art. 3, Constitution; *Atchison & N. R. Co. v. Baty,* 6 Neb., 37.)

The act, if valid, can have no application to persons or corporations not domiciled in Nebraska. Corporations are citizens and residents of the state, under the laws of which they were created, and cannot by engaging in business in another state acquire a residence there. (*Fales v. Chicago, M. & St. P. R. Co.,* 32 Fed. Rep., 673; *Insurance Co. v. Francis,* 11 Wall. [U. S.], 210; *Ex parte Schollenberger,* 96 U. S., 377; *Railroad Co. v. Koontz,* 104 U. S., 5; *Booth v. St. Louis Fire Engine Mfg. Co.,* 40 Fed. Rep., 1; *Bensinger Register Co. v. National Register Co.,* 42 Fed. Rep., 81.)

The judgment infringes upon the "full faith and credit" clause of the federal constitution. (Secs. 1, 2, art. 4, Constitution, United States; *Mooney v. Union P. R. Co., Garnishee,* 60 Ia., 346; *Harwell v. Sharp,* 85 Ga., 124; *Jenks v. Ludden,* 27 N. W. Rep. [Minn.], 188; *Warner v. Jaf-*

*fray,* 96 N. Y., 248; *Green v. Van Buskirk,* 7 Wall. [U. S.], 139; *Cole v. Cunningham,* 133 U. S., 107; *Hervey v. Rhode Island Locomotive Works,* 93 U. S., 664; *Walworth v. Harris,* 129 U. S., 355; *Scudder v. Union Nat. Bank,* 91 U. S., 406.)

*Kennedy, Gilbert & Anderson, contra:*

Chapter 25 of Laws, 1889, is constitutional, the subject of the bill is fairly expressed in the title, and there is a compliance with the constitutional requirements. (*White v. City of Lincoln,* 5 Neb., 516; *People v. McCallum,* 1 Neb., 194; *State v. Ream,* 16 Neb., 683; *State v. Bush,* 45 Kan., 138; *State v. Barrett,* 27 Kan., 213.)

The law does not undertake to divert any fine from the school fund. The recoverable items, " costs, expenses, and attorney's fees," all fall properly within legitimate costs and damages when the statute allows their recovery. (*Winkler v. Roeder,* 23 Neb., 709; *Rich v. Stretch,* 4 Neb., 189; *Seidentopf v. Annabil,* 6 Neb., 524; *Heard v. Dubuque County Bank,* 8 Neb., 13; *Hand v. Phillips,* 18 Neb., 595.)

The judgment of the district court does not infringe on the "full faith and credit·" clause of the federal constitution. The exemption existing where a debt is contracted is a vested right *in rem,* which follows the debt into any jurisdiction in which an action may be brought. The *situs* of the debt will be deemed to be at the domicile of the wage-earner by whose labor the debt due him was created. (*Mason v. Beebee,* 44 Fed. Rep., 556; *Turner v. Sioux City & P. R. Co.,* 19 Neb., 246; *Wright v. Chicago, B. & Q. R. Co.,* 19 Neb., 175; *Freeman, Judgments, sec.* 580.)

IRVINE, C.

The plaintiff in error is a corporation organized under the laws of the state of New Jersey. It has a place of doing business, styled a "general agency," at Denver, Colorado.

It has also agencies in Iowa and Nebraska, and does business in both of these states. The agents there report to the general agent at Denver. The defendant in error is a resident of Nebraska, the head of a family, and an employe of the Union Pacific Railway Company, whose lines extend into both Iowa and Nebraska. Fleming bought from the Singer Company a sewing machine upon credit. The agent of the Singer company in Omaha, after some efforts to collect the bill, returned it to the general agent at Denver, who in turn sent it to the agent in Council Bluffs, Iowa. The agent at Council Bluffs brought an action in Pottawattamie county, Iowa, against Fleming on behalf of the Singer Company, proceeding by process of foreign attachment and garnished the Union Pacific Railway Company. The result of this proceeding was that wages of Fleming to the amount of $38.05, due him from the railroad company, were seized by the Iowa court and appropriated to the payment of the judgment there rendered against Fleming. Fleming then instituted this action in Douglas county, Nebraska, under sections 531c, 531d, 531e, and 531f of the Code of Civil Procedure to recover from the Singer Company the debt so garnished, with costs, expenses, and attorney's fees. The wages reached by garnishment were earned within sixty days prior to the commencement of the action in Iowa. Judgment was rendered in favor of Fleming in the district court of Douglas county in the sum of $95.55 and costs, from which the Singer Company prosecutes error. No question is raised as to the sufficiency of evidence to support a judgment for that amount, but the judgment is sought to be reversed upon three grounds:

First—That the statute under which the action was brought is contrary to the constitution of Nebraska.

Second—That it conflicts with section 1 of article 4 of the constitution of the United States, requiring that full faith and credit shall be given in each state to the pub-

lic acts, records, and judicial proceedings of every other state.

Third—That if the law be constitutional, it does not apply to foreign corporations.

The statute referred to is as follows:

"Sec. 531c. That it be, and is hereby declared, unlawful for any creditor of, or other holder of any evidence of debt, book account, or claim of any name or nature against any laborer, servant, clerk, or other employe of any corporation, firm, or individual, in this state, for the purpose below stated, to sell, assign, transfer, or by any means dispose of any such claim, book account, bill, or debt of any name or nature whatever, to any. person or persons, firm, corporation, or institution, or to institute in this state or elsewhere, or prosecute any suit or action for any such claim or debt against any such laborer, servant, clerk, or employe by any process seeking to seize, attach, or garnish the wages of such person or persons earned within sixty days prior to the commencement of such proceeding for the purpose of avoiding the effect of the laws of the state of Nebraska concerning exemptions.

"Sec. 531d. That it is hereby declared unlawful for any person or persons to aid, assist, abet, or counsel a violation of section one of this act for any purpose whatever.

"Sec. 531e. In any proceeding, civil or criminal, growing out of a breach of sections one or two of this act, proof of the institution of a suit or service of garnishment summons by any persons, firm, or individual, in any court of any state or territory other than this state or in this state to seize by process of garnishment, or otherwise, any of the wages of such persons as defined in section one of this act, shall be deemed *prima facie* evidence of an evasion of the laws of the state of Nebraska and a breach of the provisions of this act on the part of the creditor or resident in Nebraska causing the same to be done.

"Sec. 531f. Any persons, firm, company, corporation, or

business institution guilty of a violation of sections one or two of this act shall be liable to the party injured through such violation of this act, for the amount of the debt sold, assigned, transferred, garnished, or sued upon, with all costs and expenses and a reasonable attorney's fee, to be recovered in any court of competent jurisdiction in this state, and shall further be liable by prosecution to punishment by a fine not exceeding the sum of two hundred dollars and costs of prosecution."

1. Three arguments are made upon the proposition that the statute is in conflict with the constitution of Nebraska. In the first place it is said that the act is broader than its title.    The title is as follows: "An act to provide better protection for the earnings of laborers, servants, and other employes of corporations, firms, or individuals engaged in interstate business."   We are somewhat at a loss to appreciate the argument based on this proposition.    It seems to be the theory of counsel that that portion of the act which provides for the recovery of the debt, costs, expenses, and attorney's fee, and which enacts a penalty for the violation of the law, is not expressed in the title.    These features are not distinctly expressed, but the title to the act need not amount to an analysis or complete abstract of its text. It is sufficient if the title, by general language, fairly expresses its subject-matter.    Where a bill has but one general object, it will be sufficient if the subject is fairly expressed in the title. (*People v. McCallum*, 1 Neb., 182; *State v. Ream*, 16 Neb., 681.)   The title of this act is comprehensive.    Merely to declare the doing of certain acts unlawful would be nugatory unless the act itself or other provisions of the law provided a redress for injuries inflicted by reason of its violation.    Without the section providing a remedy the act would not provide "for the better protection of the earnings" of the persons sought to be protected.    Both a substantial enactment of law and a remedy for its violation are fairly included in the title, and

the act would not be complete in the absence of either provision.

It is next urged that the act is unconstitutional because imposing a penalty which does not go to the school fund. The last section of the act undertakes to provide two remedies. One is that the person violating it shall be liable by prosecution to punishment by fine. It is not necessary to here consider whether that portion of the act is valid. If it is, the fine imposed is like all other fines in criminal cases, and is not subject to the objections urged. If it be not valid, the whole act is not therefore unconstitutional. Where a part of an act is void and a part in its nature valid, the whole act is not void, unless it appears from an examination of the act itself that the invalid portion was designed as an inducement to pass the valid, so that the whole taken together will warrant the belief that the legislature would not have passed the valid portion alone. (*State v. Lancaster County*, 6 Neb., 474; *State v. Lancaster County*, 17 Neb., 85; *Trumble v. Trumble*, 37 Neb., 340.) But counsel say the provision permitting the recovery not only of the debt, but of costs, expenses, and attorney's fees is in the nature of a penalty; and we are cited upon that subject to *Atchison & N. R. Co. v. Baty*, 6 Neb., 37. In that case an act was held void because it sought to give to the owner of live stock injured upon a railroad double the value of his property. This double recovery was clearly in the nature of a penalty. It had no element of compensation, but in the statute we are considering the damages awarded are purely compensatory. Nothing is allowed by way of vindictive damages or as a penalty, but the injured party is made whole by being permitted to recover the amount of money wrongfully taken from him, together with the exact costs and expenses by him incurred, and a reasonable attorney's fee, which is also an item of expense for which he should be compensated, and which, probably, would have been included as costs and

expenses even though not otherwise expressed. The law is for none of the reasons urged in conflict with the constitution of Nebraska.

2. Is the act in conflict with the constitution of the United States? It is said in support of this proposition that the courts of Iowa have held that a non-resident of Iowa or a foreign corporation may have an attachment in that state against a non-resident upon precisely the same grounds and upon the same conditions as a resident. The case of *Mooney v. Union P. R. Co.*, 60 Ia., 346, is cited as sustaining that contention. The case cited certainly goes that far; and that case and later cases which might have been cited carry the doctrine further and go to the extent of holding that a citizen of Nebraska may sue another citizen of Nebraska in the courts of Iowa, obtain jurisdiction by attaching and garnishing the wages earned by defendant in Nebraska, and there payable to him by a railroad company which happens to operate in both states; and that in such case the defendant, being a non-resident of Iowa, is not entitled to the benefits of the Iowa exemption laws, and that the Iowa courts will not, even upon principles of comity, give effect to the Nebraska exemption laws, and that by such a device the defendant is absolutely deprived of his exemptions under the law of either state. The question presented is whether the courts and the legislature of this state are required, in order to give full faith and credit to the judicial proceedings of Iowa, to sanction such a proceeding. We think not. The section of the federal constitution referred to requires not only that full faith and credit shall be given to the judicial proceedings of another state, but also that full faith and credit shall be given to the public acts of such state. The laws of Nebraska make sixty days' wages of laborers, mechanics, and clerks, who are heads of families, exempt from attachment, execution, and garnishment proceedings. Where the wages are earned in Nebraska and are there payable to the laborer residing

there, Nebraska is the *situs* of the debt. ( *Wright v. Chicago, B. & Q. R. Co.*, 19 Neb., 175 ; *Mason v. Beebee*, 44 Fed. Rep. 556.)   As pointed out in the case of *Mason v. Beebee*, last cited, there is a marked distinction between the *situs* of a chose in action for the purpose of jurisdiction and its *situs* for determining the rights of the parties thereto.   The case of *Mason v. Beebee* contains a well-reasoned discussion of the whole subject by Judge Shiras.   The opinion is too long to quote entire, and the whole of it is so closely applicable to the case at bar that we could not select one portion as more proper for quotation than the rest.   Suffice it to say that the case of *Mooney v. Union P. R. Co., supra,* is there discussed *in extenso,* its fallacies laid bare, and the monstrous injustice and disregard of the laws of other states which would result from following the *Mooney Case* are there demonstrated.   If the *situs* of the debt was Nebraska and not Iowa, then it follows that no legislative or judicial interposition in Iowa could rightfully sustain the jurisdiction of Iowa courts in such a case.   If the courts of Iowa should seek to prosecute a citizen of Nebraska who does not come within their jurisdiction, and to reach over into Nebraska and take from this state the property of that citizen here located, can any one for a moment urge or seriously consider that our legislature and courts, in order to give full faith and credit to the judicial proceedings of Iowa, must stand idly by and countenance such a proceeding?   Must we permit our laws to be nullified and evaded in order to sustain the courts of another state in overreaching their jurisdiction, in refusing to exercise the comity elsewhere accorded sister states and in seizing the property in Nebraska of citizens of Nebraska who have not brought themselves within the lawful reach of Iowa courts?   To quote from the brief of the plaintiff in error a citation from Black on Constitutional Prohibitions: "The moment a state attempts to lay its hands upon the rights of those whose domiciles and affairs are beyond its

boundaries, its acts are null." And to quote again from
that brief, "Where at the place of commission the act is
legally innocent, it cannot be elsewhere made a delict,"—a
principle which, if correct, must give rise to another prin-
ciple that where at the place of commission the act is
legally wrong, it cannot be elsewhere made right. The de-
cisions of the supreme court of the United States in nowise
militate against this view. In *Green v. Van Buskirk*, 5
Wall. [U. S.], 310, and 7 Wall. [U. S.], 139, the decision,
so far as it is applicable to this case, we think directly
tends to support our view. In that case one Bates, a citizen
of New York, owned certain iron safes in Chicago upon
which he gave a mortgage to Van Buskirk and others
which was executed and delivered in New York. The laws
of Illinois required for the validity of a chattel mortgage
as against third persons that it should be recorded and the
property delivered to the mortgagee. These conditions were
not complied with. The laws of Illinois further permitted
attachments against a non-resident debtor. A creditor
of Bates sued by attachment in Illinois and levied upon
and sold the safes. Van Buskirk then sued this creditor
in New York state, and the creditor pleaded in bar the at-
tachment proceedings in Illinois. The New York courts
held that the transaction was governed by the laws of
New York, and the case was then taken by writ of error to
the supreme court of the United States, which held that
the attaching creditor had been denied a privilege accorded
him by the constitution of the United States, that the prop-
erty, to-wit, the safes, were situated in Illinois, and that
the Illinois law must govern them. That is precisely the
position of the defendant in error here. His property
which was seized was in Nebraska and subject to the juris-
diction of our courts and not those of Iowa.

In *Cole v. Cunningham*, 133 U. S., 107, it was held that
it was not in violation of the constitution of the United
States for a court in one state, in which proceedings have

been begun to distribute the estate of an insolvent debtor among his creditors, to enjoin a creditor of the insolvent, a citizen of the same state, from proceeding to judgment and execution in a suit against the insolvent in another state by an attachment of his property, which property the insolvent law of the state of the domicile of the parties required the debtor to convey to his assignee. It is true that in *Cole v. Cunningham, supra,* there was a strong dissenting opinion by Mr. Justice Miller, concurred in by Justices Field and Harlan; but the dissent there was upon the ground that the opinion of the majority was contrary to *Greene v. Van Buskirk,* the *situs* of the debt in *Cole v. Cunningham,* which it was sought to reach by attachment, being in the state where the attachment was levied, and not in the state of the residence of the parties where the injunction was granted. So that, taking either the majority opinion or the dissenting opinion in *Cole v. Cunningham,* we think that the case lends force to the views we have expressed.

Even the courts of Iowa have refused to apply to their own citizens the rules which they seek to enforce extraterritorially against the citizens of other states, and have restrained a citizen of Iowa from prosecuting a suit by attachment in Minnesota against another citizen of Iowa by garnishment reaching a debt due for wages earned in Iowa. (*Teager v. Landsley,* 69 Ia., 725.) As said by Judge Shiras in *Mason v. Beebee,* "Is it consistent for the courts of Iowa to forbid by injunction its own citizens from suing in Illinois for the purpose of evading the exemption laws of Iowa and at the same time entertain suits by citizens of Illinois brought here for the purpose of evading the exemption laws of Illinois?" If full faith and credit have in these proceedings not been given to the public acts, records, and judicial proceedings of another state, it is certainly not the legislature or courts of Nebraska which have been in fault.

48

The conclusion reached does not conflict with the decision in *Chicago, B. & Q. R. Co. v. Moore,* 31 Neb., 629. It was there held that earnings so seized in Iowa could not be recovered from the garnishee, the Iowa courts having acquired jurisdiction so far as to require the garnishee to pay the money, and the judgment binding the parties to that extent. It is for that reason that a cause of action arose against the creditor for wrongful proceedings in evasion of our exemption laws.

3. Finally, it is urged that if the law be constitutional, it cannot be made to apply to foreign corporations. It is stipulated in the bill of exceptions that the Singer Sewing Machine Company was and has continued doing business in Nebraska. It is stipulated that the debt out of which the controversy arose was contracted in Nebraska. As said by this court in *Turner v. Sioux City & P. R. Co.,* 19 Neb., 241, "There is great force in the argument that the exemption existing where a debt is contracted is a vested right *in rem,* which follows the debt into any jurisdiction in which an action may be brought; that is, that the law in force when and where a debt was contracted should govern as to the rights of the creditor and debtor in that case." (See on this subject *Dorrington v. Myers,* 11 Neb., 388; *De Witt v. Wheeler & Wilson Sewing Machine Co.,* 17 Neb., 533.) It is only upon a principle of comity that a foreign corporation is permitted to here do business. When it does come here and do business, it does so with reference to our laws. It claims the rights and privileges of our laws and it cannot evade their obligations. It would be monstrous to permit a foreign corporation to hold property here, to conduct business here, to enforce contractual rights obtained under our laws, and at the same time to avoid the contractual obligations imposed by the same laws. But it is said that the judgment complained of grew out of an act committed elsewhere and innocent where it was committed. The general principle is conceded that the law of the place

where an act is done determines its validity; but the tort complained of was not committed in Iowa. The tort consisted in seizing property in Nebraska exempt under the laws of Nebraska. The plaintiff in error was enabled to do this by instituting proceedings in another state; but the tort consisted not in instituting those proceedings in Iowa. A suit might rightfully be begun there *in personam* had Fleming brought himself within the jurisdiction of the Iowa courts. No action would have arisen had the property attached been situated in Iowa or in a state other than Nebraska. The wrong was in seizing the debt situated in Nebraska, payable in Nebraska to a citizen of Nebraska. The statute in this respect is not confined to actions begun in another state, but extends to every attachment or garnishment of exempt wages whether the proceeding be instituted in this state or elsewhere. It is true that if the proceeding had been instituted in Nebraska, a partial redress could have been had by way of defense in the original action, but that consideration only affects the *quantum* of damages. The tort, the cause of action, would have been precisely the same. There is no question raised as to the jurisdiction of the court over the person of the plaintiff in error. It has committed an act here which is a tort, and it must here answer for that tort. A somewhat similar question was presented in the case of *O'Connor v. Walter*, 37 Neb., 267. It was there said: "In extending credit, every one dealing with the head of a family must take into account this right of exemption, and, presumably, in every extension of credit, this right is recognized. It therefore in no way operates to the injury of the law abiding creditor. The rapacity which respects neither implied contract obligations nor statutory enactments must, in damages, respond for this, as for any other act of misappropriation."

We neglected, perhaps, in the proper place to notice one objection to the act, but it is one which can be appropriately

noticed in closing,—that is, that the act is "a vicious example of class legislation," and *Atchison & N. R. Co. v. Baty,* 6 Neb., 37, is cited in support of that proposition. The act under discussion in that case applied to one class only, and there was perhaps no basis founded upon any reasonable distinction for selecting that class as the recipients of that peculiar privilege. Here the case is different. The act we are now considering applies to every one who falls within the purview of the law exempting wages. The validity of that exemption cannot be doubted; and if it were proper for the legislature to provide that exemption, then it certainly was also proper for the legislature, by appropriate action, to enforce the rights so granted. The mischief, to prevent which the act was passed, is a matter of common knowledge. An extensive and thriving business was being conducted by the institution of suits precisely similar to that out of which this action arose and having for their sole object the evasion of the laws of this state. The act was passed to prevent, and should be so construed as to prevent, the continuance of this infamous business. It is perhaps only fair to say that neither the representatives of the corporation in Nebraska nor counsel for the corporation engaged in this case are shown to have had any part in the Iowa proceedings.

JUDGMENT AFFIRMED.