LOWENSTEIN et al. v. LEVY.

FOLZ v. LEVY.

(Circuit Court of Appeals, Sixth Circuit. April 7, 1914.)

Nos. 2434, 2474.

1. GARNISHMENT (§ 144*)—ANSWER OF GARNISHEE—CONSTRUCTION.
    Plaintiff sued in Tennessee defendant F., a nonresident, and on July 13, 1907, garnisheed L. Bros., who on August 5th answered that F. had sued them in New York and recovered a verdict of $24,217.02, but a new trial had been granted, unless F. would consent to a reduction of the ver-

dict to $5,189.52, and that the garnishees denied liability for breach of the contract on which they had been sued by F. *Held,* that since the answer of a garnishee speaks from the date of the service of garnishment, the answer should be construed as alleging that a suit was then pending in New York, based on the indebtedness sought to be garnisheed, and that the New York court had acquired complete jurisdiction over such indebtedness.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 270; Dec. Dig. § 144.*]

:2. GARNISHMENT (§ 235*)—PROCESS AGAINST NONRESIDENT.

Where garnishment proceedings are instituted against a nonresident, leading to a judgment and a deprivation of property without personal service, jurisdiction must clearly appear when the proceedings are attacked directly.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. §§ 423–427, 443, 444, 447, 450–452; Dec. Dig. § 235.*]

3. GARNISHMENT (§ 231*) — PROPERTY SUBJECT — INDEBTEDNESS — SUBJECT OF SUIT IN FOREIGN JURISDICTION.

Where, prior to garnishment proceedings in Tennessee against F., residing in New York, it appeared by the garnishee's answer that at the time of the garnishment a suit was pending in New York by F. against the garnishee to recover on the identical indebtedness, and that the New York court had acquired full jurisdiction of the subject-matter, the indebtedness could not serve as a basis of jurisdiction of the courts in Tennessee.

[Ed. Note.—For other cases, see Garnishment, Dec. Dig. § 231.*]

·4. COURTS (§ 37*)—JURISDICTION—SUBJECT-MATTER—WAIVER.

Where jurisdiction of a nonresident was sought to be obtained by garnishment of an indebtedness owing by a resident, but it appeared on the face of the record that the indebtedness was unavailable for that purpose, a waiver of the objection would not be found, unless it clearly appeared from a record unambiguous on that point.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 147–149, 151, 156; Dec. Dig. § 37.*]

Appeals from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action by Isaac Levy against Solomon Folz, in which Elias Lowenstein and others were garnisheed. Defendant Folz, having removed the cause to the federal court, moved to dismiss the principal suit because of his nonresidence, and because the garnishment had reached no property within the district. This motion being denied, and judgment subsequently rendered against both Folz and the garnishees, they bring separate appeals. Reversed.

Levy and Folz had business relations out of which grew a claim by Levy against Folz for $9,000. Levy was a resident of Memphis, Folz, of New York. Lowenstein Bros., also residing in Memphis, were indebted to Folz. Levy brought suit in the state court, at Memphis, on his claim against Folz; and, on July 13, 1907, upon a showing that the defendant was a nonresident, took out a garnishee attachment against Lowenstein Bros. To the garnishment, Lowenstein Bros., on August 5th, filed this answer:

"Solomon Folz sued B. Lowenstein & Bros. for breach of contract, and the case was tried in New York City before Judge Seabury, and resulted in a verdict of $24,217.02 in his favor, but Judge Seabury granted a new trial unless Folz would consent to a reduction of the verdict to $5,189.52; that being the amount for which the court found a verdict would be justified.

B. Lowenstein Bros. deny liability for breach of contract, as the contract between them and Folz was terminated by mutual agreement."

Plaintiff proceeded by publication against Folz, and the latter thereafter appeared specially, removed the case to the District Court, and moved to dismiss the principal suit because of his nonresidence and because the garnishment had reached no property within the district, and hence there was no jurisdiction to support a substituted service. Pending this motion, all parties stipulated that the case might stand without further action while the New York litigation continued. In February, 1912, Lowenstein, in answer to plaintiff's summons, further answered:

"Said firm of B. Lowenstein & Bros. is indebted to the defendant, Solomon Folz, in the sum of $5,189.52. The amount has been fixed by judgment of the Supreme Court of the city of New York, which was affirmed by the Court of Appeals of the state of New York. This judgment was recently rendered, in December, 1911."

Thereafter Folz's motion to dismiss was denied, he did not answer, an order pro confesso was entered against him, and thereafter a final decree, awarding to Levy $5,189.52 against Lowenstein and judgment of the same amount against Folz, the principal defendant, without prejudice to Levy's right to recover the remainder of his claim against Folz in any subsequent proceeding. The principal defendant and the garnishee defendant bring separate appeals.

Lehman, Gates & Martin, of Memphis, Tenn., for appellants Lowenstein and others.

A. W. Biggs, of Memphis, Tenn., for appellant Folz.

J. C. Wilson and Israel H. Peres, both of Memphis, Tenn., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

DENISON, Circuit Judge (after stating the facts as above). [1] We find it necessary to consider only one question, among the many presented. The power of the court to enter judgment against the garnishee defendant and the independent judgment against the principal defendant is challenged, because it rested solely upon the supposed seizure within the district of an indebtedness already the subject of suit and judgment in a foreign jurisdiction. This challenge questions the true meaning and effect of the first answer or disclosure by the garnishee. It is not clear and unambiguous. It does not in terms say that the New York judgment, to which it refers, had been rendered, or even that the New York suit had been commenced, before July 13th, the effective date of the garnishment; and it is theoretically possible that such a suit might have been brought and a judgment been had and a motion for a new trial been passed upon in the interval between July 13th and the date of the disclosure, August 5th. It, therefore, would not be hopelessly inconsistent with the disclosure to conclude that the New York suit had been commenced later than the Memphis suit, so that it could cut no figure, in bar or in abatement, of the Memphis suit.

However, we cannot think that this is the natural or reasonable construction of this disclosure; and we say so for two reasons: The first is that the date of the service of the garnishment upon them seems to be the date which the garnishees would naturally have in mind in mak-

ing their answer, and so naturally to be considered as the date as of which their answer would intend to speak. The writ notified them on July 13th that "all the property, money, goods and effects of the said defendant now in your custody or possession has been attached," and "not to pay said defendant any debts now due or hereafter to become due." This general situation, common to all garnishment or attachment proceedings with which we are familiar, strongly suggests that when the garnishees thereafter answer and say that a suit has been brought or a judgment has been rendered, they mean to refer to the condition of things when they were served. This inference is strengthened by the thought that if the foreign suit was commenced after the garnishment suit, there would be little or no object in mentioning it at all. It is true that the Tennessee statute (Shan. Code, § 4816), as developed in the form of the writ of garnishment, requires the garnishee to retain possession of "all property and effects of the said defendant which are now or may hereafter come under your control or into your possession until you shall have made full answer to this garnishment"; but this provision for additional liability against the garnishee, arising after issue of the writ, is for an unusual thing, and the fact that the language of the answer might possibly refer to a situation which had arisen since the issue of the writ is not of much force in deciding the fair and reasonable meaning of the general statement which was made, particularly in a case where there is nothing affirmatively indicating that there was any change between the two dates in question. The other reason above mentioned is this: While it is not incredible that a suit could be brought and tried and a verdict rendered and a motion for a new trial made and disposed of, all within 23 days, it is extremely improbable; from what we all know of the customary way of doing things, it is not likely that any more could have happened during that time than the making and hearing and disposing of the motion for new trial.

[2] Then, in construing this answer, we have further help from the familiar rule that in this class of proceedings leading to a judgment and deprivation of property without any personal service, and especially when the attack is not collateral but direct, the jurisdiction must clearly appear. The burden must be upon the party asserting the extraordinary jurisdiction. Accordingly, it is held in Tennessee that the liability of the garnishee is not to be arrived at by surmises or inferences, but only from direct admissions or necessary conclusions. Moses v. McMullen, 44 Tenn. (4 Cold.) 242, 245. It is true that some Tennessee decisions seem to put the burden upon the garnishee to set up matter in avoidance of his liability, but this is only where the disclosure admits an original liability. Here Lowenstein denied the existence of any indebtedness to Folz. This denial accentuates the necessity that the party who charges the liability in spite of the denial should make it clearly appear, and emphasizes the requirement, that any doubt whether the New York suit was the earlier should be solved against the plaintiff. Putting all these considerations together, we conclude this answer was intended to say, and must be treated as if it did at least say, that on the 13th of July a suit was pending in the New York Supreme Court, based upon the indebtedness in question.

Whether it also should be treated as saying that a judgment had then been rendered against the garnishee defendant, we need not decide.

[3] This interpretation of the disclosure presents the question whether, when a suit is pending in the courts of one state, brought by the principal creditor against the principal debtor, and full jurisdiction over the cause of action and the debtor's person has been obtained, the same indebtedness can serve as the basis of jurisdiction for the courts of another state in a suit by his creditor against the plaintiff in the first suit as principal defendant, and against the defendant in the first suit as garnishee defendant. This question must be answered in the negative. In the cases where the first suit has reached the stage of a judgment, the ruling of the Supreme Court in Wabash R. R. Co. v. Tourville, 179 U. S. 322, 327, 21 Sup. Ct. 113, 45 L. Ed. 210, should be accepted as controlling; but it is not necessary that the first suit should have developed into a judgment. The principle involved is not the necessity that a court must control its own judgments, although this has been given importance in many cases; it is rather the familiar principle that prior seizure of the property involved gives exclusive jurisdiction over that property. As said in Covell v. Heyman, 111 U. S. 176, 182, 4 Sup. Ct. 355, 358 (28 L. Ed. 390), speaking of federal courts and state courts:

"They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void."

This was said regarding an actual seizure of physical property, but it must be no less true regarding the only kind of seizure which can be made of intangible property. The thing here involved, the debt from Lowenstein to Folz, could be seized or appropriated at Memphis only by the service of process like a summons on Lowenstein; but the same thing had already been impounded in the same way by the Supreme Court in New York. This consideration of the reasons involved sufficiently distinguishes the converse situation, and cases like Barnsdall v. Waltemeyer, 142 Fed. 415, 418, 73 C. C. A. 515 (C. C. A. 8), where it has been held that the pendency of a prior garnishment in another jurisdiction did not bar a suit by the principal defendant therein against his debtor, the garnishee defendant therein, in a court having jurisdiction of the latter's person. In such case the jurisdiction of the court in the second suit is complete by personal service upon defendant, while in cases like the present, the challenged jurisdiction rests only on a supposed seizure of property which had already been taken by another court, and so could not be seized in the second case. This court held, in Mack v. Winslow, 59 Fed. 316, 8 C. C. A. 134, that the reasoning of the Supreme Court in Wallace v. McConnell, 13 Pet. 136, 10 L. Ed. 95, reached a case essentially like the present one, and we see no occasion to doubt the correctness of that ruling. See, also, Clark v. 505,000 Feet of Lumber, 65 Fed. 236, 240, 12 C. C. A. 628 (C. C. A. 7), and cases cited in Menees v. Matthews (D. C.) 197 Fed. 633, 635.

We find nothing to the contrary in Tennessee. In Huff v. Mills, 15 Tenn. (7 Yerg.) 42, the first suit and the garnishment suit were in the same county court, and jurisdiction in the second suit did not depend on the successful seizure of a debt. The sweeping language of the court indicates a view of the scope of the Tennessee statutes, which view, in Paper Co. v. Shyer, 108 Tenn. 444, 67 S. W. 856, 58 L. R. A. 173, was withdrawn. So far as Huff v. Mills may support the right of garnishment in a second suit in another court, it seems inconsistent with the later case of Clodfelter v. Cox, 33 Tenn. (1 Sneed) 330, 340, 60 Am. Dec. 157.

[4] The only hesitation we have in reversing these cases on the ground we have discussed is because the record does not make very clear that the point was ever brought to the attention of the District Judge. Folz's motion to dismiss did not specifically raise the question of a prior suit pending, and there is nothing to show what objections or defenses Lowenstein did make to the final decree, or, indeed, that he made any, save the recital that on final hearing the case was "argued by counsel." However, the point involved a total failure of power to proceed; the defect appears upon the face of the record; and, although it may have been in the nature of a personal privilege which would be ineffective if not insisted upon, we think waiver of such an obstacle should clearly appear, and should not be inferred from a record ambiguous on that subject, and that this record may be ambiguous is the most that can be said.

The decree is reversed, with costs, on both appeals, but appellants will recover only one docket fee. Folz's motion should be granted, and the garnishee proceedings be dismissed. This conclusion makes unimportant the question of equity jurisdiction. The case is remanded accordingly.