ST. LOUIS & S. F. R. CO. v. CREWS.

No. 3929. Opinion Filed September 14, 1915.

(151 Pac. 879.)

1. **GARNISHMENT—Duty to Give Notice and Make Defenses— Action Against Garnishee—Pleading and Proof.** In an action by a plaintiff against a nonresident defendant, who is served with notice of the same only by publication, it is the duty of a garnishee therein to notify such principal defendant of such

garnishment proceedings if able to do so and, also, to interpose in behalf of such principal defendant any defense thereto of which he is cognizant and which he is able to make.

(a) Where such action is upon a claim or debt assigned to such plaintiff in violation of a statute of another state inhibiting such assignment for the purpose of attachment, garnishment, or other process, outside of such other state, when the creditor, the debtor (being a citizen of such other state), and the person or corporation owing the money intended to be reached by the proceedings in attachment or garnishment are all within the jurisdiction of such other state, so that the **res** may be as well seized in such other state if not exempt by law, such violation of such statute of such other state is a defense to such garnishment proceedings and should be interposed by such garnishee.

(b) As, in such cases, the **res** is intangible and cannot be impounded in either state otherwise than by summons or like process, the garnishment process being a summons, the same is regarded as impounded in that state in which such process is first served or jurisdiction thereof first acquired; and, upon the principle of **"qui prior est tempore potior est jure,"** the pendency in another state of a prior action by such principal defendant, as plaintiff, against such garnishee, as defendant, is a defense against such garnishment proceedings and should be interposed by such garnishee.

(c) A garnishee who has not given such notice and interposed such defenses is guilty of negligence of duty to his creditor (such principal defendant) and will not be allowed to set up payment of a judgment against him in such garnishment proceedings as a defense to an action by such creditor against him for the debt so garnisheed.

(d) Such garnishee, to be entitled to set up payment of such judgment against him in such garnishment proceedings as a defense to an action against him by such creditor for the debt so garnisheed, should allege and prove that he discharged his duty to such creditor in respect to giving such notice and making such defenses in such garnishment proceedings.

2. **ASSIGNMENTS—Assignment of Claim—Validity of Statute.** Sess. Laws 1910, sec. 2, c. 14, p. 19 (section 2912, Rev. Laws 1910), inhibiting any assignment of a claim or debt for the purpose of attachment, garnishment, or other **mesne** process, outside of this state, when the creditor, the debtor (being a citizen of this state), and the person or corporation owing the money intended to be reached by such process are all within the jurisdiction of this state, is within the police power of the state and is constitutional and valid to the extent of such inhibition.

(a) As to whether the further provision in said section that, in such stiuation of all such parties, any assignment of a claim or debt "which is thereafter attempted to be collected out of the wages or personal earnings of the debtor, in courts outside of the State of Oklahoma," is prohibited, is constitutional and valid, is not determined; but its constitutionality is doubted.

3. **GARNISHMENT — Judgment — Foreign Judgment — Full Faith and Credit—Judgment Against Garnishee—Extent of Adjudication.** A judgment against a garnishee in a court that did not acquire jurisdiction of the person of the principal defendant, which does not recite that such garnishee disclosed any defensive matter or any fact other than an admission of his indebtedness to the principal defendant, is not, as against such principal defendant and in favor of such garnishee, an adjudication of any issue as to whether such garnishee discharged his duty to such principal defendant in such garnishment proceedings in respect to notice and defenses.

(a) Such judgment would not be accorded faith or credit as such adjudication in the state in which it is rendered, nor in any other state.

(b) A refusal of a court of a state other than the one in which it was rendered to give such judgment effect as an adjudication of such issue between the garnishee and the principal defendant is not a denial of the same the full faith and credit to which it is entitled under section 905, Rev. St. U. S. (U. S. Comp. St. 1913, sec. 1519).

4. **SAME—Foreign Judgment—Pleading and Proof.** In the absence of Congressional enactment and subject to section 3999, St. 1893 (section 4772, Rev. Laws 1910), the general rules of pleading and evidence obtain in ascertaining in one state what faith and credit is given a judgment in the courts of another state in which such judgment was rendered.

(Syllabus by Thacker, C.)

*Error from District Court, Pontotoc County;*
*Tom D. McKeown, Judge.*

Action by L. G. Crews against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans, R. A. Klenschmidt,* and *E. H. Foster,* for plaintiff in error.

*Z. B. Sanders,* for defendant in error.

Opinion by THACKER, C. The plaintiff in error will be designated as "defendant," and defendant in error as "plaintiff," in accord with their respective titles in the trial court.

This is an action for debt commenced on July 27, 1910, by plaintiff, a resident citizen of Oklahoma, against defendant, a Missouri railway corporation owning and operating a line of its road in Pontotoc county, Okla. The defendant, on September 22, 1910, answered by a general denial; but on September 29, 1911, the day of the trial, it filed an amended answer admitting said indebtedness to the amount of $406.20, less a credit of $295.50 claimed on account of a judgment rendered against it, as garnishee, on May 13, 1911, by a justice of the peace of Wyandotte county, Kan., in an action commenced before him on January 16, 1911, by L. A. Palmer, a resident of Kansas, as plaintiff, against the plaintiff in the instant case as defendant, who, being a nonresident of Kansas, was served with notice thereof only by publication, upon a claim for house rent, labor performed, money had and received, and goods sold and delivered, assigned to said Palmer by one Henson, a resident of Oklahoma, in violation, it appears, of Session Laws of Oklahoma of 1910, section 2, c. 14, p. 19 (section 2912, Rev. Laws 1910), if the same is a constitutional and valid law, unless said Kansas judgment in effect negatives and is conclusive as to such violation.

As predicate for its said claim of said credit, the defendant, in said amended answer, alleged, in substance and effect, the following and no other pertinent facts: That, upon being served with garnishment process in said case in said Kansas court, this defendant, as garnishee there, on April 14, 1911, answered admitting its in-

debtedness to this plaintiff (defendant in that case) to the amount of $406.20; that thereupon and on the same day said Kansas court found that this plaintiff (the defendant there) could not be personally served with summons in Kansas and continued that case for publication to May 13, 1911, a period of 29 days; that on May 13, 1911, said Kansas court found that due and legal publication service had been made on this plaintiff (defendant there) and gave judgment against him for $284.30 and costs taxed at $11.20, making a total of said $295.50, which amount this defendant (garnishee there) was by said judgment ordered to pay into said court; and that this defendant, as such garnishee, paid that amount into that court as so ordered to do.

Plaintiff, in reply thereto, alleged:

"Comes now the plaintiff, and, for reply to defendant's affirmative allegation set up in the defendant's answer, pleads over against the defendant herein, wherein it sets up a judgment rendered in favor of one L. A. Palmer, from the justice court of Wyandotte county, Kan., and says that the plaintiff Palmer in that action is a nonresident of the State of Oklahoma, and a resident of the State of Kansas, and that he is the assignee of one W. A. Henson, a resident of the county of Pontotoc, State of Oklahoma, which assignment was had and suit brought since the 8th day of June, 1910, which judgment is void, all of which is done with intent to cheat and defraud this plaintiff."

No question as to the sufficiency of this reply to allege a right under, and thus raise the question of the constitutionality and effect of, the said section 2912, Rev. Laws 1910, is raised.

The court, in the instant case, over plaintiff's very comprehensive objection, including a denial of the juris-

diction of the Kansas court, admitted in evidence in proof of defendant's said allegation the said Kansas court judgment, which, in substance and effect, recites all said facts alleged by plaintiff, except the fact of defendant's payment of said $295.50 into the Kansas court as thereby required to do, and no other fact is thereby shown; but, in instructing a verdict for the plaintiff to the amount of $464.95, with interest from May 1, 1910, at six per cent., the court denied the defendant's claim of credit to the amount of said $295.50 in words as follows:

"The court instructs you that the judgment introduced in evidence, obtained in the justice of the peace court of Wyandotte county, in the State of Kansas, appears to have been obtained by a transfer or assignment of a claim from one Henson, a resident of the State of Oklahoma, made in January, 1911, and that the assignment of said claim is in violation of the statute of the State of Oklahoma, known as Senate Bill No. 21, of the Session Laws of 1910, which provides, among other things, that no creditor residing in the State of Oklahoma can assign, transfer, or send a claim to persons out of the State of Oklahoma for the purpose of collecting claims against persons within the State of Oklahoma. And for that reason the court holds that the judgment in the State of Kansas is not binding upon the plaintiff in this case, and that the defendant company is not entitled to a credit for the amount of that judgment."

On September 29, 1911, upon an instructed verdict, the plaintiff recovered judgment for $464.95 (less $29.40, for which plaintiff entered a *remittitur*) with interest thereon from May 1, 1910, at the rate of six per cent. per annum, thereby rejecting defendant's said claim of a credit to the amount of $295.50.

It is the duty of a garnishee, in such cases as this, to interpose in behalf of his creditor (defendant in that

action) the defenses of which he is cognizant and which he is able to make, in order to be entitled to set up a judgment and payment· in such garnishment proceedings in bar of an action against him by such creditor for the garnisheed debt. 20 Cyc. 1143; *In re Beals* (D. C.) 116 Fed. 530; *Southern Ry. Co. v. Fulford,* 125 Ga. 103, 54 S. E. 68, 5 Ann. Cas. 168, and notes thereto; *Ill. Cent. Ry. Co. v. Smith,* 70 Miss. 344, 12 So. 461, 19 L. R. A. 577, 35 Am. St. Rep. 651, and notes thereto.

It should here be observed, however, that the two cases last above cited are contrary to the general holdings of the courts in respect to a certain, here unimportant, application of. the rule they are cited to support.

It is also the duty of the garnishee, in such cases as this, to give or excuse its failure to give its creditor (defendant in the case in which the garnishment is sued out) notice of the garnishment proceedings, in order to be entitled to set up judgment and payment thereof in garnishment in bar of an action against it by such creditor for the garnisheed debt. 2 Enc. U. S. Rep. 688, 689, and 701; *Harris v. Balk,* 198 U. S. 215, 25 Sup. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084; *C., R. I. & P. Ry. Co. v. Sturm,* 174 U. S. 710, 19 Sup. Ct. 797, 43 L Ed. 1144.

The pertinent part of the answer of the defendant in the instant case, merely alleging as it does that on April 14, 1911, as garnishee in Kansas, it answered the garnishment process from the Kansas court admitting its indebtedness to the present plaintiff (who was principal defendant in that case) to the amount of $406.20, as aforesaid, impliedly and upon the principle of *expressio unius est exclusio alterius,* negatives the idea that it disclosed to that court any matter of defense against that

action or process; such, for instance, as the pendency of the instant case or the assignment of the claim sued on in violation of our statute; and no excuse for failure to do so is alleged in the answer or shown in the evidence in the instant case.

The errors assigned, each and all, relate to the question as to whether the trial court erred in instructing the jury to return said verdict for plaintiff and to reject defendant's claim of credit to the amount of $295.50 as aforesaid.

The principal contention of the defendant is that said Session Laws of 1910, section 2, c. 14, p. 19 (section 2912, Rev. Laws 1910), upon which the question was decided against it in the trial court, is unconstitutional and void. The section in question reads as follows:

"Whosoever, directly or indirectly, assigns or transfers any ,claim or debt against a citizen of Oklahoma for the purpose of having the same collected by proceedings in attachment, garnishment or other process, or which is thereafter attempted to be so collected out of the wages or personal earnings of the debtor, in courts outside of the State of Oklahoma, when the creditor, the debtor, and the person or corporation owing the money intended to be reached by the proceedings in attachment or garnishment, are all within the jurisdiction of the State of Oklahoma, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not more than one thousand dollars, nor less than five hundred dollars or imprisonment in the county jail of not less than thirty days, nor more than one year, or both such fine and imprisonment."

In *Minnetonka Oil Co. v. Cleveland Vitrified Brick Co.*, 27 Okla. 180, 111 Pac. 326, it is said:

"At common law no chose in action was assignable. In equity, however, every chose in action, except a tort,

was assignable, but subject to all equities that might be set up against it. * * * Under our statute, every chose in action, not founded upon a tort, is assignable, and right of action is conferred upon the assignee." Sections 3898, 3899, Stat. 1893 (sections 4681, 4682, Rev. Laws 1910).

And in 2 R. C. L. sec. 3, p. 595, it is said:

"Except in cases within the law merchant, it was an established principle of the common law that a chose in action, which is defined as a personal right not reduced into possession, but recoverable by a suit at law, could not be assigned, and that no man could purchase another's right to a suit either in whole or in part."

It thus appears that the legal right to assign a chose in action is statutory; and we see no reason why both the legal and the equitable right may not be reasonably qualified by statute, as by the inhibition contained in said section 2912, Rev. Laws 1910, to prevent evasion of state laws affecting the rights of its citizens.

The following cases touching the power of the state in regard to the right of individuals to contract in general seem in logical effect at least to justify the last preceding statement: *Williams v. Fourth National Bank,* 15 Okla. 477, 82 Pac. 496, 2 L. R. A. (N. S.) 334, 6 Ann. Cas. 970; *Noble v. Ft. Smith Wholesale Gro. Co.,* 34 Okla. 662, 127 Pac. 14, 46 L. R. A. (N. S.) 455; *Central Loan & Trust Co. v. Campbell Com. Co.,* 173 U. S. 84, 19 Sup. Ct. 346, 43 L. Ed. 623; *Otis v. Parker,* 187 U. S. 606, 23 Sup. Ct. 168, 47 L. Ed. 323; *Cantwell v. Missouri,* 199 U. S. 602, 26 Sup. Ct. 749, 50 L. Ed. 329; *Booth v. Illinois,* 184 U. S. 425, 22 Sup. Ct. 425, 46 L. Ed. 623; *Fay v. Bankers' Surety Co.,* 125 Minn., 211, 146 N. W. 359, Ann. Cas. 1915C, 688; *Ex parte Gemmill,* 20 Idaho, 732, 119 Pac. 298, 41 L. R. A. (N. S.) 711, Ann. Cas. 1913A, 76; *Boone*

*v. State,* 170 Ala. 57, 54 So. 109, Ann. Cas. 1912C, 1065; *Chicago & E. R. Co. v. Ebersole* (Ind.) 87 N. E. 1090.

In *Otis v. Parker, supra,* a state statute was upheld "avoiding all contracts for sales of shares of corporate stock on margin, and providing for the recovery of any money paid on such contracts, although this provision may be construed to apply to *bona fide* as well as gambling contracts."

In *Fay v. Bankers' Surety Co., supra,* it is said:

"Speaking generally, there would seem to be little doubt concerning the power of the Legislature to regulate assignments of choses in action, which were not assignable at common law, though the rule was otherwise in equity. Certainly the general legislative power has always existed at least to attach reasonable conditions. Like objections to analogous statutes have recently been considered by some of the ablest state courts of this country, and also by the Supreme Court of the United States. In *International Text-Book Co. v. Weissinger,* 160 Ind. 349, 65 N. E. 521, 65 L. R. A. 599, 98 Am. St. Rep. 334, it was held that the police power was ample to prohibit employees from assigning future wages. The Supreme Court of Massachusetts, in *Mutual Loan Co. v. Martell,* 200 Mass. 482, 86 N. E. 916, 43 L. R. A. (N. S.) 746, 128 Am. St. Rep. 446, decided that the constitutional right to contract was in no wise infr'nged by requiring assignments of future wages, to secure small loans, to be accepted by employers in writing, consented to by the wives of the assignors, and recorded, in order to be enforceable. Subsequently that case was affirmed in 222 U. S. 225, 32 Sup. Ct. 74, 56 L. Ed. 175, Ann. Cas. 1913B, 529. While neither of the courts last mentioned sustain a total prohibition of assignments of wages, the latter affirms the holding of the former, and also, as likewise the Massachusetts and Indiana cases, sustain the legislation as against the claim of improper classification. In *Massie v. Cessna,* 239 Ill. 352, 88 N. E. 152, 28 L. R. A. (N. S.)

1108, 130 Am. St. Rep. 234, a different view was taken concerning restrictions upon assignments of salaries. New York, however, approves and follows the decisions in *Mutual Loan Company v. Martell, supra,* and the conclusion reached is that its 'statute is a reasonable exercise of the police power vested in the Legislature and tends to preserve the public welfare and the particular welfare of both the employer and the employee.' See *Thompson v. Erie R. Co.,* 207 N. Y. 171, 177, 100 N. E. 791. While the statutes so construed differ from the one under consideration, no distinction in principle is involved. We consider the reasoning of the cases upholding the New York and Massachusetts statutes conclusive as to the constitutionality of ours and sustain it."

The practice of resident creditors, having claims for debt against resident debtors, to send such claims to persons, companies, or corporations out of this state for action thereon or to assign them to another person, company, or corporation, to be collected in another state by attachment or garnishment process in its courts against such resident debtor's debtors, who, together with the *res* to be attached or garnisheed, can be reached by such process in this as well as in such other state, as a means of evading the exemption or other laws of this state or of defeating any right such resident debtor may have under our laws, was no doubt the evil against which this and the other sections of this statute were directed.

Statutes similar to the one under consideration in the instant case exist in some of the other states, including Kansas (section 1, c. 118, Laws of 1909, Gen. Stat. 1909, sec 5842) ; and they appear to have been generally upheld by the courts as intended and appropriate to prevent evasions of the laws, especially the exemption laws, of the states enacting them.

The following cases, either directly or in more imme-
diate logical effect than those hereinbefore cited, uphold
such statutes as constitutional: *Cole v. Cunningham,* 113
U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538 (not involving
any statutes, but sustaining the right of courts of equity
to enjoin assignments) ; *Sweeny v. Hunter,* 145 Pa. 363,
22 Atl. 653, 14 L. R. A. 594; *Singer Manufacturing Co.
v. Fleming,* 39 Neb. 679, 58 N. W. 226, 23 L. R. A. 210,
42 Am. St. Rep. 613; *O'Connor v. Walter,* 37 Neb. 267,
55 N. W. 867, 23 L. R. A. 650, 40 Am. St. Rep. 486;
*Bishop v. Middleton,* 43 Neb. 10, 61 N. W. 129, 26 L. R.
A. 445; *Baltimore & Ohio Southwestern R. Co. v. Adams,*
159 Ind. 688, 66 N. E. 43, 60 L. R. A. 396; *Markley v.
Murphy,* 180 Ind. 4, 102 N. E. 376, 47 L. R. A. (N. S.)
689; *Hinds v. Sells,* 63 Ohio St. 328, 58 N. E. 800; *Dough-
erty v. American McKenna Process Co.,* 255 Ill. 369, 99
N. E. 619, Ann. Cas. 1913D, 568.

In *Sweeney v. Hunter, supra,* it is said:

"In Story on Equity Jurisprudence, secs. 899, 900,
the principle is thus stated: 'But, although the courts of
one country have no authority to stay proceedings in the
courts of another, they have an undoubted authority to
control all persons [and things] within their own terri-
torial limits. When therefore both parties to a suit in
a foreign country are resident within the territorial lim-
its of another country, the courts of equity of the latter
may act *in personam* upon those parties, and direct them
by injunction to proceed no further in such suit. In
such a case, these courts act upon the acknowledged prin-
ciples of public law in regard to jurisdiction. They do
not pretend to direct or control the foreign court, but,
without regard to the situation of the subject-matter of
the dispute, they consider the equities between the par-
ties, and decree *in personam* according to those equities.
* * * It is now held that, whenever the parties are

resident within a country, the courts of that country have full authority to act upon them personally, with respect to the subject of suits in a foreign country, as the ends of justice may require; and, with that in view, order them to take, or omit to take, any steps and proceedings in any other court of justice, whether in the same country, or in any foreign country.' If a state court has the power to thus restrain its citizens, and prevent the evasion or nullification of its laws, what is there to prevent the Legislature, which can enlarge or limit such jurisdiction, from enacting laws the effect of which will be similar to that of proceedings by injunction."

The statute under consideration applies only to cases in which the creditor, the debtor, and the person or corporation owing money or for earnings intended to be reached by attachment, garnishment, or other *mesne* process, are all within the jurisdiction of this state, the *res* to be reached by such process being thus within the reach of the process of the courts of this state if not exempt, and in which the claim is sent to persons, companies, or corporations out of the state or assigned to such persons, companies, or corporations for collection by such process in the courts of another jurisdiction.

It may be doubted if the provision in this section of the statute that, in the situation of all the parties therein described, any assignment of a claim or debt "which is thereafter attempted to be collected out of the wages or personal earnings of the debtor, in courts outside of the State of Oklahoma," is prohibited, is constitutional and valid, as this would seem to be a futile attempt to give the statute extraterritorial effect upon the action of an assignee in the courts of another state, although such assignee may have taken the assignment in good faith and even without any intent at the time to take such

action, thus giving the statute the effect of following a valid assignment into another jurisdiction and preventing a lawful assignee from suing out a writ of attachment or garnishment in such other jurisdiction without having such act to automatically operate to invalidate the theretofore valid assignment to him. In the instant case, it is neither necessary to consider or determine whether this last-quoted provision is constitutional and valid nor, if so, its effect, and we will not do so. But, excepting this last-quoted provision, we are of the opinion that the statute is within the police power of the state and is constitutional and valid, as hereinbefore shown.

It not only appears that the violation of said section 2912, Rev. Laws 1910, might have been successfully presented to the Kansas court as a defense to said garnishment proceedings, but it further appears that the pendency of the instant case, if disclosed to the Kansas court, would have prevented the judgment against this defendant as such garnishee.

The principle upon which the case of *M., K. & T. Ry. Co. v. Bradshaw*, 37 Okla. 317, 132 Pac. 327, is based, *i. e.*, the maxim of *"qui prior est tempore potior est jure"* (he who is first in time is better in right), would seem to be decisive of the instant case for the reason that it requires us to assume, as shown by the authorities quoted in that case and by the latter case of *Lowenstein v. Levy*, 212 Fed. 383, 129 C. C. A. 59, that if the present defendant had, in his answer as garnishee in the Kansas court, disclosed the pendency of the instant case, the judgment against him therein would not have been entered.

The case of *M., K. & T. Ry. Co. v. Bradshaw, supra,* cites and quotes authorities from which this conclusion

is imperative; and in the later case of *Lowenstein v. Levy, supra,* a decision to the same effect is expressly predicated upon the view that a mere personal action for debt impounds thè *res* as against foreign jurisdiction and fixes its *situs* as within the state as against a foreign jurisdiction in the same way and as effectively as a summons in garnishment does; the *res* being intangible.

In said Lowenstein Case it is said:

"The principle involved is not the necessity that a court must control its own judgments, although this has been given importance in many cases; it is rather the familiar principle that prior seizure of the property involved gives exclusive jurisdiction over that property. * * * This was said regarding an actual seizure of physical property, but it must be no less true regarding the only kind of seizure which can be made of intangible property. The thing here involved, the debt * * * could be seized or appropriated at Memphis (where the garnishment process was served) only by the service of process like a summons (on the garnishee) ; but the same thing had already been impounded in the same way by the Supreme Court of New York"—that is, by an ordinary action for the debt and the acquisition of jurisdiction of the person of the principal debtor.

Also, see *Cole v. Cunningham,* 133 U. S. 107, 10 Sup. Ct. 269, 33 L. Ed. 538; *Wabash Ry. Co. v. Tourville,* 179 U. S. 322, 21 Sup. Ct. 113, 45 L. Ed. 210.

We are not unmindful of section 1, art. 4, of the federal Constitution, which reads:

"Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

Nor have we overlooked section 905, Rev. Statutes of the United States (U. S. Comp. St. 1913, sec. 1519, 3 Fed. Stat. Ann. 37), which reads:

"The records and judicial proceedings of the courts of any state or territory * * * shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with the certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given them in every court within the United States as they have by law or usage in the courts of the state from which they are taken."

And it appears clear that the Kansas judgment, to the extent of the jurisdiction of the Kansas court, is here conclusive of the issues thereby determined so far as the same is entitled to faith and credit by law or usage in the courts of Kansas.

If the question as to whether the assignment of the claim of debt by Henson to Palmer was in violation of the laws of Oklahoma, and the effect thereof upon Palmer's right to seize the debt by garnishment in Kansas was involved in and determined by the Kansas judgment, so that the adjudication would be conclusive in Kansas courts upon the plaintiff (the principal defendant in the Kansas court), it must be regarded as conclusive here.

If the question of the pendency and effect of the instant case was involved in and determined by the Kansas judgment, so that the adjudication is conclusive in Kansas upon the plaintiff here (the principal defendant there), it must be regarded as conclusive here.

But, however far-reaching and conclusive the judgment in question may be as between the plaintiff there

and this defendant, as garnishee there, or even as between that plaintiff and the plaintiff here in respect to the *res*, the Kansas court did not acquire jurisdiction of the person of the plaintiff in the instant case (the principal defendant there), and that judgment is not and does not purport to be and could not have been entered so as to be of any effect whatever as a personal judgment against him (*Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565) ; and the defendant here is entitled to plead it and the payment thereof in bar *pro tanto* of the present action only if, in fact, the *res,* that is, the debt for which plaintiff now sues, was, without the fault of the garnishee, subjected to it.

In other words, the Kansas judgment, to which the plaintiff here was not a party in person, together with the fact of the defendant's payment thereof, is a *pro tanto* defense to the present action only if (1) the Kansas court acquired jurisdiction of and appropriated the. *res,* that is, the debt, and (2) if the present defendant, as garnishee there, so discharged its duty in that case to the plaintiff here as to be entitled to plead the same here.

It may not be inapposite to here direct attention to the fact that, subject to section 3999, Stat. 1893, section 4772, Rev. Laws 1910 (see *Cowan v. Maxwell*, 27 Okla. 87, 111 Pac. 388; *Butcher v. Bank of Brownsville*, 2 Kan. 70, 83 Am. Dec. 466; *Rheinhart v. State*, 14 Kan. 318), the general rules of pleading and evidence obtain in ascertaining in one state the effect in the courts of another state of a judgment rendered by a court of such other state. 9 Fed. Stat. Ann. 147; 6 Enc. U. S. Sup. Ct. Rep. 337, 344-347; *Hanley v. Donoghue*, 116 U. S. 1, 6 Sup. Ct. 242, 29 L. Ed. 535; *Chicago & Alton Ry. Co. v. Wiggins Ferry Co.*, 119 U. S. 615, 7 Sup. Ct. 398, 30 L. Ed. 519.

And it would seem that the burden was upon the defendant in the instant case to show the court by what right he here asks that the Kansas judgment against him, to which the plaintiff here was not in person a party, be allowed to bar *pro tanto* this plaintiff's action against him.

If, as may be true, the trial court erred in assuming in the instruction in question that the assignment of the claim by Henson to Palmer in violation of our law of itself, and without regard to what was determined by the Kansas court, disentitled the defendant in the instant case to plead the Kansas judgment as bar *pro tanto* to this action, such error was harmless.

The mere fact that the trial court may have given the jury a wrong or imperfect reason for instructing it to reject the credit claimed by defendant is certainly harmless error, if, as we have hereinbefore undertaken to show, the plaintiff was for other reasons entitled to an instruction rejecting said claim of credit.

If, as contended by defendant, this court should presume that the statute laws of Kansas applicable to the said case in the Kansas courts are the same as our own, it would seem that this case would have to be affirmed upon the authority of *M., K. & T. Ry. Co. v. Housley,* 43 Okla. 794, 144 Pac. 610, as it would appear that Palmer (the plaintiff in the Kansas case) did not proceed in accordance with the statute (section 4696, Stat. 1893; section 5396, Rev. Laws 1910) to obtain service by publication and jurisdiction of the *res;* but the foregoing views make it unnecessary to determine or consider the question.

51—6

For the reasons stated in this opinion, the judgment of the trial court should be affirmed.

By the Court: It is so ordered.